Thomas Joseph **MAGGIANO**, Petitioner,

v.

**PENNSYLVANIA STATE BOARD OF VEHICLE MANUFACTURERS, DEALERS, AND SALESPERSONS,** Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 1995.

Decided May 25, 1995.

William M. Spalding, for petitioner.

Wade A. Fluck, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Thomas Joseph Maggiano (Petitioner) petitions for review of an order of the State Board of Vehicle Manufacturers, Dealers, and Salespersons (Board) that levied a civil penalty in the amount of $2,800.00 against Petitioner for violation of Section 5(a) of the Board of Vehicles Act (Act), Act of December 22, P.L. 306, *as amended,* 63 P.S. § 818.5(a).[1] We affirm.

On July 9, 1991, an order to show cause was filed, alleging that Petitioner sold at least fifteen motor vehicles in 1989 and 1990 and, thus, violated the Act in that he engaged in the business of vehicle dealer without proper licensure. Petitioner denied the allegation that he violated the Act, contending that any sales of motor vehicles were done in his capacity as a vehicle salesperson or as a casual sale in connection with his automotive garage business.

A hearing was held on December 12, 1991, at which time the Commonwealth's prosecuting attorney entered documents evidencing Petitioner's prior dealer's license, which expired in 1981, Petitioner's active license as a vehicle salesperson for Gallagher Motors[2] and the title histories of the vehicles at issue. The title histories showed that, from September, 1989 through December, 1989, Petitioner had sold six vehicles and, from January, 1990 through July, 1990, he had sold eight vehicles. The Board set forth findings of fact based on the information provided in the above mentioned documents. Then Petitioner testified on his own behalf and from his testimony the Board made the following findings of fact:

5. During 1989 and 1990, Maggiano operated an auto repair garage at least five

---

1. 63 P.S. § 818.5(a) states:
   (a) License required.—To promote the public safety and welfare, it shall be unlawful for any person to engage in the business of salesperson, broker, dealer, manufacturer, factory branch, distributor, distributor branch, factory or distributor representative or wholesaler within this Commonwealth unless he has secured a license as required under this act.

2. The transactions in this case were unrelated to Petitioner's employment as a salesperson for Gallagher Motors.

days a week. (Notes of Testimony (NT) at 13).

6. During 1989 and 1990, Maggiano attended the Carriage Trade Auto Auction (Carriage Trade) every week. (NT 45).

7. During 1989 and 1990, Maggiano would take orders from customers and purchase vehicles for them at Carriage Trade. (NT 48).

8. Maggiano performed repairs on the vehicles he obtained at Carriage Trade before he resold the vehicles to customers. (NT at 44).

9. Maggiano did not take title to any of the vehicles he purchased at Carriage Trade and resold to his customers. (NT at 52).

10. Maggiano did not pay sales tax on any vehicles he purchased at Carriage Trade for resale to his customers during 1989 and 1990. (NT at 45).

11. Maggiano used dealer plates belonging to Gallagher Motors to transport vehicles which he purchased on his own behalf. (NT at 50).

(Board's decision, pp. 3–4.)

In the discussion section of its decision, the Board reviewed Petitioner's actions, believing these actions place Petitioner within the definition of a "dealer" under the Act.[3] The Board noted that Petitioner did not dispute or object to the documentary evidence, but contended that, because he did not spend a substantial amount of his time purchasing, repairing and reselling the vehicles at issue, he did not fall within the purview of the Act's definition of "dealer." The Board also noted that Petitioner's contention that he only spent an hour or two per vehicle in regard to this endeavor is belied by his testimony concerning time spent attending the auto auction each week and the repairs he made to each vehicle. The Board also discussed Petitioner's actions in not taking title to or paying

sales tax on the vehicles, which the Board believed were actions "indicative of an individual engaged in a profit-making enterprise, not someone who is making the occasional purchase of an automobile for their personal use." (Board's decision, p. 7.) Based on Petitioner's experience, his having had a dealer's license in the past and his present salesperson's license, the Board concluded that Petitioner was deliberately attempting to circumvent the requirements of the Act; thus, the Board deemed the $200.00 per vehicle penalty appropriate under the circumstances.

■ On appeal to this Court,[4] Petitioner first argues that the Board misinterpreted and disregarded the express statutory language that requires an individual to devote a *substantial* portion of his time engaged in the business as an automobile dealer to be deemed a dealer and, therefore, be required to comply with the licensure procedures. Petitioner cites various portions of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, in an attempt to show that the Board incorrectly interpreted the word "substantial" as it relates to Petitioner's activities. Petitioner also cites the ordinary meaning of the word "substantial," contending that the legislature meant that more than a fraction or scintilla of time must be devoted to dealer type activities and that Petitioner's activities here were less than that.

In response, the Board cites *Alpha Auto Sales v. Department of State, Bureau of Professional and Occupational Affairs*, 537 Pa. 353, 644 A.2d 153 (1994), a recent Supreme Court case that interprets the term "new vehicle" as used in the Act at issue here. In *Alpha*, the court stated:

> The proper place to begin the appropriate inquiry is not, however, with the dictionary but with due deference to the views of the

---

3. Under Section 2 of the Act, 63 P.S. § 818.2, the term "dealer" is defined as "[a] person engaged in and devoting a substantial portion time to the business of buying, selling or exchanging used vehicles ... on commission, compensation or other consideration."

4. Upon reviewing this decision, this Court must affirm the Board's adjudication unless we find

that Petitioner's constitutional rights have been violated, the adjudication is not in accordance with the law, or necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Naglich v. State Board of Motor Vehicle Manufacturers, Dealers and Salesmen*, 86 Pa.Commonwealth Ct. 478, 485 A.2d 851 (1984).

regulatory agency directly involved in administering the statute in question. We have long held that the 'contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it is clear that such construction is erroneous.' *Federal Deposit Insurance Corp. v. Board of Finance and Review,* 368 Pa. 463, 471, 84 A.2d 495, 499 (1951). The instant Commonwealth Court opinion itself recognizes that 'an administrative agency's expert interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous.' *Mormak v. Unemployment Compensation Board of Review,* 135 Pa.Commonwealth Ct. 232, 237, 579 A.2d 1383, 1385–86 (1990).

*Alpha,* 537 Pa. at 357, 644 A.2d at 155.

▮ Following *Alpha,* our focus must center on the Board's interpretation of the Act and its application to Petitioner; the Board's decision cannot be overturned unless clearly erroneous.

Petitioner asserts that an individual is entitled to sell five vehicles in a twelve month period without violating the provisions of the Act, citing 49 Pa.Code § 19.1. With this argument, Petitioner attempts to show that the Act recognizes that the casual sale of vehicles does not trigger the licensing provisions of the Act.

49 Pa.Code § 19.1 states:

The General Assembly of this Commonwealth finds and declares that the sale of new and used motor vehicles in the Commonwealth vitally affects the general economy of the Commonwealth, the public interest and public welfare, and that in order

to promote the public interest and the public welfare, and in the exercise of its police power, it is necessary to license manufacturers, dealers and salespersons of new and used motor vehicles doing business in the Commonwealth, in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this Commonwealth.

▮ Initially, we note that 49 Pa.Code § 19.1 does not reference the sale of five vehicles by any individual. In fact, it sets forth the legislative purposes of the Act. Two portions of the Act that do reference the sale of five vehicles include the definitions of "broker"[5] and "curb-stoner or unlicensed salesman,"[6] both of which focus on an individual's buying and selling of vehicles, and which the Board contends show that under the Act the sale of more than five vehicles evidences a *substantial* amount of time. We agree.

The Board's construction of the Act is supported by cogent reasons and, pursuant to the *Alpha* court's holding, we are required to defer to the Board's interpretation of the Act, especially in light of the Act's legislative purpose.[7]

Petitioner next argues that the Board's findings were not based on substantial evidence, because the Commonwealth failed to provide any evidence that Petitioner held himself out to be a dealer. Petitioner also contends that the documents showing the vehicle histories are inadmissible hearsay, because the proper foundation as to their authenticity was not provided, citing *Naglich,* and because unobjected to hearsay cannot be relied upon without corroborating evidence, citing *Walker v. Unemployment Compensa-*

---

**5.** "Broker" is defined, in part, in Section 2 of the Act as "[a]ny person who, for a commission, compensation or other valuable consideration, engages or participates in the wholesale or retail sale in one calendar year of five or more used vehicles or any new vehicle as the agent for the buyer or seller." 63 P.S. § 818.2.

**6.** "Curb-stoner or unlicensed salesperson" is defined as "[a]ny person who, for a commission, compensation or other valuable consideration,

and without being licensed in accordance with this act as a salesperson, engages in the wholesale or retail sale, exchange or purchase in one calendar year of five or more used vehicles or any new vehicle." Section 2 of the Act, 63 P.S. § 818.2.

**7.** By our decision here, we do not imply that Petitioner defrauded or treated his customers in an improper manner.

*tion Board of Review,* 27 Pa.Commonwealth Ct. 522, 367 A.2d 366 (1976).

■ Sections 6103 and 6104 of the Judicial Code, 42 Pa.C.S. §§ 6103 and 6104, provide that copies of official records kept by an agency of the Commonwealth and attested to by an officer having the legal custody of the documents and certified by that officer are admissible as evidence of facts stated therein. The documents at issue here were introduced with the proper certification and establish that Petitioner transferred ownership of the fourteen vehicles between September, 1989 and July, 1990. This alone is enough to support the Board's findings.

■ In addition, the documents contain Petitioner's signature as seller and Petitioner himself admits to selling the vehicles in question. Even if the documents were found not to have come within the official documents exception to the hearsay rule, they were not objected to, and were corroborated by Petitioner's own testimony. Therefore, under *Walker,* the documentary evidence could be relied upon as substantial evidence to support the Board's findings of fact.

■ With regard to Petitioner's argument that no evidence showed that he held himself out to be a dealer, we conclude that the manner in which Petitioner represented himself to his customers or auction personnel is not relevant. The documents in the record, establishing the sale of the vehicles, provide the necessary proof that the Act was violated.

Furthermore, Petitioner's reliance on *Naglich* is misplaced. In *Naglich,* the documents found not admissible were those from another state that did not conform to Section 5328(a) of the Uniform Interstate and International Procedure Act, 42 Pa.C.S. § 5328(a), but the Commonwealth's records, like those at issue here, conformed to the requirements of 42 Pa.C.S. § 6103 and, thus, were admitted into evidence and could be relied upon unless found inadmissible for other reasons. Here, no other basis for inadmissibility was present; therefore, the Board did not err in relying on the documents submitted by the Commonwealth.

Lastly, Petitioner argues that the penalty imposed was excessive because no proof of willfulness or bad motive was shown; however, he does concede that the Board has broad discretion when accessing a penalty or fine established by statute. Specifically, Section 19 of the Act, 63 P.S. § 818.19, provides that the Board may levy a civil penalty of $1,000.00 for each violation of the Act, with the sale of each vehicle constituting a separate violation.

In *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 139 Pa.Commonwealth Ct. 21, 24, 589 A.2d 294, 296 (1991), a case involving the Board's imposition of sanctions including license suspension and fines, the court stated:

> An administrative agency's exercise of its discretion cannot be overturned by a reviewing court in the absence of fraud, bad faith or flagrant abuse of discretion.... While this Court is required to correct abuses of discretion in the manner or degree of the penalties imposed, we will not, absent a manifestly unreasonable exercise of judgment, substitute our discretion for that of the Board, an administrative body endowed with expertise in matters subject to it jurisdiction. (Citation omitted.)

■ The Board, in its decision, explained that, because of Petitioner's prior experience, i.e., having been previously licensed as a dealer and as a salesperson, it believed Petitioner's action was "a deliberate attempt to circumvent the licensure requirements." (Board's decision, p. 7.) Although the Board could have levied the maximum fine of $1,000.00 per vehicle totaling $14,000.00, the Board determined that a $200.00 per vehicle fine totaling $2,800.00 was proper under the circumstances. We may not substitute our judgment for that of the Board, so long as the penalty imposed was reasonable in light of the violation. *Id.* We conclude that it is reasonable. Thus, having found no abuse of discretion on the part of the Board, we will not substitute a lesser sanction.

Accordingly, the Board's order is affirmed.

### ORDER

NOW, May 25, 1995, the order of the State Board of Vehicle Manufacturers, Dealers,

and Salespersons, at No. 90–60–01538, dated October 21, 1994, is affirmed.