**FIRST WARD REPUBLICAN CLUB OF PHILADELPHIA, Appellant**

**v.**

**COMMONWEALTH of Pennsylvania, PA LIQUOR CONTROL BOARD.**

Commonwealth Court of Pennsylvania.

Argued Oct. 14, 2010.
Decided Dec. 15, 2010.

---

Paul L. Herron, Philadelphia, for appellant.

James F. Maher, Asst. Counsel, Harrisburg, for appellee.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY Judge BROBSON.

First Ward Republican Club of Philadelphia (First Ward) appeals from an order of the Court of Common Pleas of Philadel-

phia County (trial court), which affirmed an order of the Pennsylvania Liquor Control Board (Board) denying First Ward's application for renewal of its catering club liquor license (liquor license).[1] The trial court concluded that the Board established a pattern of behavior sufficient to deny renewal of First Ward's liquor license pursuant to the Liquor Code.[2] We vacate the trial court's order and remand for further proceedings.

The procedural history in this case can be summarized as follows. On September 11, 2006, First Ward filed an untimely application for the renewal of liquor license No. CC–2397 for the premises located at 2300 South Woodstock Street in Philadelphia. (Reproduced Record (R.R.) R33a.)[3] By letter dated October 31, 2006, the Board informed First Ward that following a preliminary review of First Ward's history of operation, the Board had identified two objections to renewal of First Ward's liquor license. (*Id.* at R184a.) The first objection was in reference to citation number 92–2015, a violation of the Liquor Code,[4] and the second objection referred to approximately four (4) incidents of disturbances at First Ward's establishment that were reported to the Philadelphia Police Department. (*Id.*) The Board's letter also indicated that the Bureau of Licensing rejected First Ward's late-filed renewal application pursuant to Section 470(a) of the Liquor Code.[5] (*Id.* at R184a.) On April 30, 2007, the Board amended its objections to include claims of improper conduct, referring to approximately twenty (20) incidents of disturbances at or immediately adjacent to First Ward's establishment. (*Id.* at R181a.) The Board's April 30, 2007 letter informed First Ward that any one of the stated reasons was sufficient in and of itself to warrant nonrenewal of First Ward's liquor license. (*Id.*)

On July 17, 2007, a Board Hearing Examiner (Hearing Examiner) conducted a hearing on the Board's objections. (*Id.* at R83a.) In opposition to First Ward's application, the Board entered into evidence First Ward's late filed renewal application; the Board's original and amended objection letters; citation number 92–2015, Exhibits B8 through B25; testimony by Officers Raymond Zukauskis (*Id.* at R1–4a,

---

1. A catering club liquor license is issued for a two-year period and allows a licensee the authority to sell alcohol to nonmembers as part of a catered event.

2. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101–10–1001.

3. First Ward's renewal application for the two-year license period *ending* October 31, 2008, should have been filed by September 1, 2006. (R.R. at R80a.) *See* Section 470(a) of the Liquor Code.

4. Citation No. 92–2015 was issued to First Ward on September 25, 1992, alleging First Ward failed to maintain a copy of the constitution and/or by-laws on the licensed premises in violation of 40 Pa.Code § 5.75, and alleging that First Ward failed to maintain financial records in conformance with 40 Pa. Code § 5.73. The Board fined First Ward $200.00 for the violation. (R.R. at R192a.)

5. 47 P.S. § 4–470(a). Section 470(a) of the Liquor Code grants the Board the authority to refuse a license renewal and provides, in part:

> Unless the board shall have given ten days previous notice to the applicant of objections to the renewal of his license, based upon violation by the licensee or his servants, agents or employees of any of the laws of the Commonwealth or regulations of the board relating to the manufacture, transportation, use, storage, importation, possession or sale of liquors, alcohol or malt or brewed beverages, or the conduct of a licensed establishment, or unless the applicant has by his own act become a person of ill repute, or unless the premises do not meet the requirements of this act or the regulations of the board, the license of a licensee shall be renewed.

R90a, R100a–103a) and Tammy Smith Hamilton (*Id.* at R110a–111a) of the Philadelphia Police Department concerning complaints regarding loud music on First Ward's premise, and testimony by Officer Omar Ramos, also of the Philadelphia Police Department, regarding an incident involving an alleged simple assault. (*Id.* at R87a, R91a–137a.) Exhibits B8 through B25 consisted of Act 48 documents and police investigation reports (collectively referred to herein as Act 48 incident reports).[6]

First Ward objected, to no avail, to the admissibility of the Act 48 incident reports as hearsay because (a) they were introduced through the testimony of Officer Ramos who was neither the officer who responded to the incidents reflected in the reports nor the custodian of the records, and (b) because the records were not certified by a police department. (*Id.* at R144a.) After the hearing, the Hearing Examiner issued an opinion recommending First Ward's application for renewal of its liquor license be approved, subject to a conditional licensing agreement. (*Id.* at R81a.) The Hearing Examiner also recommended that First Ward be required to abide strictly by Sections 406(4) and 499(a) of the Liquor Code.[7] (*Id.*)

On September 19, 2007, the Board, rejecting the Hearing Examiner's recommendation, issued an order refusing First Ward's application for renewal of its liquor license. (*Id.* at R48a.) The Board's decision was based upon its conclusion that First Ward abused its licensing privilege and offered no evidence of any remedial steps taken to address disturbances that occurred on or about the premises.[8] The Board specifically found that nineteen (19) incidents of loud music escaping the premises occurred either shortly before midnight or later and resulted in police visits to First Ward's premises. The Board concluded that First Ward's "disregard for the peace of the neighborhood and the liquor laws and its frequent failure to abide by the rules regarding closing time, combined with its lack of steps, substantial or otherwise, taken to combat such unlawful activity, require the Board to refuse the renewal of the license at this time." (*Id.* at R51a.)

First Ward timely appealed the Board's decision to the trial court. Following a hearing, the trial court affirmed the decision of the Board based on a pattern of disturbances and dismissed First Ward's appeal. In reaching that determination, the trial court considered two citations

6. An Act 48 document is referred to in the record as an incident report and also as a DC (District Control). (R.R. at 130a.) An Act 48 incident report is generated by the responding police officer. (R.R. at R139a.) An investigation report is a Philadelphia Police Department computer generated form also referred to as a B9. (R.R. at R139a.)

7. Section 406(4) of the Liquor Code, 47 P.S. § 4–406(4), provides, in part, that "[n]o club licensee or its servants, agents or employes may sell liquor or malt or brewed beverages between the hours of three o'clock antemeridian and seven o'clock antemeridian on any day."
 Section 499(a) of the Liquor Code, 47 P.S. § 4–499(a), provides, in part:

All patrons of a licensee shall be required to leave that part of the premises habitually used for the serving of liquor or malt or brewed beverages to guests or patrons not later than one-half hour after the time the licensee is required by this act to cease serving liquor or malt or brewed beverages ... unless the licensee has been granted a permit for extended hours food service.

8. The Board's decision not to renew First Ward's liquor license was not based on the lateness of its application or on the basis of First Ward's citation activity described *infra* in footnote 4.

that were adjudicated *subsequent* to the Board's determination not to renew First Ward's liquor license. The trial court specifically determined that the Board's introduction into evidence of the two citations adjudicated subsequent to the Board's hearing was proper as further evidence of a pattern of behavior. (Certified Record (C.R.), trial court opinion of August 14, 2009.) Further, the trial court explained that a significant pattern of disturbances is sufficient grounds for the Board to refuse renewal of a liquor license even if the applicant has not violated any part of the Liquor Code. (*Id.*)

■ On appeal,[9] First Ward argues that both the Board and the trial court misconstrued the evidence submitted at the hearing before the Hearing Examiner and, as a result, failed to establish properly facts that would allow the Board to deny First Ward's renewal application. First Ward contends that the Act 48 incident reports constituted hearsay and that the trial court erred in admitting them into evidence. Alternatively, First Ward argues that if the Act 48 incident reports were admissible, the trial court erred in considering them in their entirety. First Ward contends that the trial court should have only considered

as evidence the Act 48 incident reports in which the police officers documented that they actually heard loud music. First Ward further contends that to the extent that the Act 48 incident reports are admissible and relevant they, along with the other evidence submitted, do not establish a significant pattern of disturbances. Therefore, substantial evidence does not exist for a determination that a pattern of disturbances was established. First Ward also argues that the trial court committed an error of law by admitting into evidence the two citations adjudicated *subsequent* to the Board's administrative hearing.

■ As remedial civil legislation, the Liquor Code is to be liberally construed to effectuate its purpose to protect the public health, welfare, peace, and morals. *Hyland Enterprises, Inc. v. Pa. Liquor Control Bd.*, 158 Pa.Cmwlth. 283, 631 A.2d 789, 792 (1993). Moreover, this Court has stated that the purpose of the Liquor Code, as enforced by the Board, is to regulate and restrain the sale of liquor, not to promote it. *Id.*

■ Under the Liquor Code, renewal of a liquor license is not automatic. Section 470(a.1) of the Liquor Code [10] provides

9. This Court's standard of review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Pa. Liquor Control Bd., v. Bartosh*, 730 A.2d 1029, 1032 (Pa.Cmwlth.1999.) Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992).

10. 47 P.S. § 4–470(a.1). Section 470(a.1) of the Liquor Code, provides:

(a.1) The Director of the Bureau of Licensing may object to and the board may refuse a properly filed license application:

(1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employees have violated any of the laws of this Commonwealth or any of the regulations of the board; (2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the board or were involved in a license whose renewal was objected to by the Bureau of Licensing under this section; (3) if the licensed premises no longer meets the requirements of this act or the board's regulations; or (4) due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, di-

that the Board "may" refuse to renew a liquor license for several reasons, including the fact that a licensee has one or more adjudicated citations. The use of the term "may" gives the Board discretionary authority to decide whether to grant or deny a properly filed renewal application. *U.S.A. Deli, Inc. v. Pa. Liquor Control Bd.*, 909 A.2d 24, 28 (Pa.Cmwlth.2006), *appeal denied*, 593 Pa. 736, 929 A.2d 647 (2007). The licensee's record of violations may be considered in deciding whether to renew a liquor license, and even a single violation can be sufficient grounds to decline to renew the license. *Goodfellas, Inc. v. Pa. Liquor Control Bd.*, 921 A.2d 559, 564–565 (Pa.Cmwlth.), *appeal denied*, 594 Pa. 700, 934 A.2d 1279 (2007). Moreover, a licensee may be held accountable for non-Liquor Code violations if it can be established that there was a pattern of illegal activity on the licensed premises of which the licensee knew or should have known, and the licensee failed to take substantial steps to prevent such activity. *Philly Int'l Bar, Inc. v. Pa. Liquor Control Bd.*, 973 A.2d 1, 3 (Pa.Cmwlth.2008), *appeal denied*, 602 Pa. 668, 980 A.2d 609 (2009).

■ Initially, First Ward argues the trial court improperly admitted into evidence the Act 48 incident reports on the basis of hearsay and authentication. First Ward further argues that the Act 48 incident reports are hearsay and that only five (5) out of the nineteen (19) Act 48 incident reports even demonstrate that the responding police officer heard loud music. Under these circumstances, the incident reports do not constitute substantial evidence of a significant pattern of behavior. For these reasons, First Ward argues that the trial court erred in sustaining the Board's nonrenewal of its liquor license and dismissing First Ward's appeal.

We agree with First Ward that the Act 48 incident reports constitute hearsay, because they contain out-of-court statements offered to prove the truth of the matters asserted therein. *See D'Alessandro v. Pennsylvania State Police*, 878 A.2d 133, 140 (Pa.Cmwlth.2005), *rev'd on other grounds*, 594 Pa. 500, 937 A.2d 404 (2007). The question we must answer is whether the Act 48 incident reports were properly admitted into evidence as an exception to the hearsay rule. Of potential application to this matter are the hearsay exceptions for "official records" and "business records."

■ In order to determine whether the Act 48 incident reports were admissible pursuant to the hearsay exception for official records, we must examine Sections 6103 and 6104 of the Judicial Code, 42 Pa.C.S. §§ 6103 and 6104.[11] Pursuant to

rectors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

11. Section 6103(a) of the Judicial Code, relating to proof of official records, provides, in part:

An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody.

those sections of the Judicial Code, copies of official records kept by an agency of the state, which are attested to and certified by an officer having the legal custody of the documents, are admissible as evidence of facts stated therein. *Maggiano v. Pa. State Bd. of Vehicle Mfrs., Dealers, & Salespersons*, 659 A.2d 1071, 1075 (Pa. Cmwlth.1995). This Court has determined that a plain reading of Section 6103 of the Judicial Code reveals that the officer having custody of the public record must attest to the official copy, and there must be a certificate verifying that the officer has custody of the original. *Thorne v. Dep't of Transp., Bureau of Driver Licensing*, 727 A.2d 1205, 1208 (Pa.Cmwlth.1999.) The legislative purpose behind the enactment of Section 6103 of the Judicial Code is to allow a method by which official records may be introduced into evidence without the need for bringing the records custodian into court to authenticate the records. *Id.* at 1207.

 Additionally, we must examine Section 6108 of the Judicial Code, 42 Pa. C.S. § 6108, to determine whether the Act 48 incident reports were admissible pursuant to the business records exception to the hearsay rule.[12] Section 6108 of the Judicial Code was enacted to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition, or an event was made in the regular course of business, at or near the time of the act, condition, or event, and where the sources of information, method, and time of preparation were such as to justify its admission. *Boyle v. Steiman*, 429 Pa.Super. 1, 631 A.2d 1025 (1993), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994). Under this exception, the Pennsylvania Supreme Court has held that if a qualifying witness can provide sufficient information relating to the preparation and maintenance of the records to justify the presumption of trustworthiness for the business records exception, a sufficient basis is provided to offset the hearsay character of the evidence and it is not necessary to produce either the preparer or the custodian of the record at the time the

---

Section 6104 of the Judicial Code, relating to effect of official records generally, provides:

(a) *A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible* as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted. (b) A copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness. (Emphasis added).

12. 42 Pa.C.S. § 6108. Section 6108 of the Judicial Code, relating to business records, provides in part:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

As used in this section "BUSINESS" includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not. Rather than refer to Section 6108 of the Judicial Code, relating to business records, the Board referred to Federal Rule of Evidence 803(6), relating to records of regularly conducted activity. The Federal Rules of Evidence are not directly applicable, although they may provide some guidance in our interpretation of the state counterpart. *See D'Alessandro v. Pa. State Police*, 594 Pa. 500, 513–15, 937 A.2d 404, 412–13 (2007).

entries were made. *In re Estate of Indyk,* 488 Pa. 567, 573, 413 A.2d 371, 373 (1979). So long as the *authenticating witness* can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence. *Id.*

■ An individual may be a qualifying witness and his testimony may lay a proper foundation for the admission of a report if his responsibilities include the review of the report in question and he testifies that the report was prepared by a subordinate of his and maintained for him by a member of his staff. *See R.A. Freudig Assocs. v. Cmwlth., Ins. Dep't,* 110 Pa.Cmwlth. 311, 532 A.2d 509, 512 (1982). In this case, Officer Ramos testified that he had been subpoenaed to testify about *one* incident that occurred on February 5, 2006, when he received a radio call for a simple assault at First Ward's location. (R.R. at R117a, R128a.) He testified that he completed an Act 48 incident report at the scene of the simple assault call. (*Id.* at R117a, R125a–R126a.) In addition to testimony about the simple assault incident, Officer Ramos testified to the proper procedures and circumstances that require a police officer to complete an Act 48 incident report as part of his duties. (*Id.* at R125a–R126a.)

The Board, however, offered *all nineteen (19)* Act 48 incident reports, which contain dates, times, and a police officer's description of the calls responded to at First Ward's premises, on the basis of Officer Ramos's testimony. (R.R. at R140a, R193a–R210a.) The trial court admitted the Act 148 incident reports, and they were entered as Exhibits B8 through B25 over the hearsay objection of First Ward.

A careful review of the record reveals that the Board did not offer any evidence that Officer Ramos had legal custody of the Act 48 incident reports or that the Act 48 incident reports were accompanied by the necessary certificate verifying Officer Ramos had custody of the records as required by the "official record" exception to the hearsay rule. Therefore, because the Act 48 incident reports were not authenticated as provided for by Section 6103 of the Judicial Code, the Act 48 incident reports could not properly be admitted as official records pursuant to Section 6104(a) of the Judicial Code.

■ With regard to the admissibility of the Act 48 incident reports as business records, a review of the record also reveals that Officer Ramos was not the officer who responded to all of the incidents described in the Act 48 incident reports, and he was not responsible for preparing or reviewing the information contained in the Act 48 incident reports. (*Id.* at R143a–R144a.) Furthermore, the record does not establish that a subordinate of Officer Ramos was responsible for maintaining the Act 48 incident reports for Officer Ramos. Officer Ramos's testimony does not provide sufficient evidence of the trustworthiness of the documents as business records such as to offset the hearsay character of the evidence. Therefore, the Act 48 incident reports in question, with the exception of those prepared by those police officers who actually appeared to testify at the hearing before the trial court were not admissible pursuant to the business record exception to hearsay.

Because neither the official records nor business records exceptions to hearsay are applicable based upon the record before us, we must conclude that the trial court erred in admitting the Act 48 incident reports, with exception of the four Act 48 incident reports actually prepared by and

authenticated by Officers Zukauskis and Smith Hamilton.

Next, First Wards argues that the trial court committed an error of law by admitting into evidence two citations adjudicated subsequent to the Board's administrative hearing. Specifically, First Ward contends that by admitting and considering the two citations, the trial court abused its discretion and violated First Ward's right to due process. In support of that argument, First Ward cites Section 470(a.2) of the Liquor Code, 47 P.S. § 4–470(a.2), which requires the Board to give renewal applicants written notice of the Board's objection at least ten (10) days before their license renewal period commences.[13]

■■■■ A trial court reviewing a decision of the Board not to renew a liquor license hears the matter de novo, and may sustain, alter, modify, or amend the Board's order even when it is based upon the same evidence presented before the Board. *Philly Int'l Bar,* 973 A.2d at 3. Generally, in the context of a nonrenewal action, the finder of fact may consider all past adjudicated Liquor Code violations no matter when they occurred. *See Bartosh,* 730 A.2d at 1033; *Ball Park's Main Course, Inc. v. Pa. Liquor Control Bd.,* 163 Pa.Cmwlth. 636, 641 A.2d 713 (1994) (Board erred in considering pending unadjudicated Liquor Code violation), *appeal denied,* 539 Pa. 655, 651 A.2d 542 (1994); *Hyland Enter.,* 631 A.2d at 790–92. In cases where the trial court has considered all past Liquor Code violations, however, such as *Bartosh* and *Hyland Enterprises,* the trial court considered only adjudicated violations that occurred *prior* to the hearing before the Board. The trial court did not consider any adjudicated violations that occurred *subsequent* to the Board's hearing and decision. No case of this Court has yet examined whether a trial court may consider violations that occurred *after* the Board's hearing and the Board's issuance of its determination not to renew a liquor license. In fact, cases of this Court, such as *Bartosh, Ball Park's Main Course,* and *Hyland Enterprises,* do not support consideration of violations that occurred *after* the Board's hearing and issuance of its determination. Rather, those cases establish that in determining whether the Board properly denied renewal of a license, the trial court may examine all circumstances that the Board considered when it issued its decision not to renew a license, including past adjudicated Liquor Code violations. While subsequently adjudicated citations may, in and of themselves, support a separate, future action by the Board, they cannot be used to buttress a preceding determination of the Board.

Further, such a conclusion is supported by Section 470(a.2) of the Liquor Code, which clearly mandates that the Board shall only refuse to renew a license application if the Licensing Bureau gives the applicant at least ten days notice, stating the basis for the objection. This Court has concluded that the language in Section 470(a.2) of the Liquor Code requires ten days notice prior to the date of the hearing. *In re License Renewal of The Quippan Club,* 806 A.2d 491, 494 (Pa.Cmwlth. 2002). It is simply impossible for the Board to provide notice to a licensee ten days prior to a hearing that the Board plans to introduce post-hearing adjudicat-

---

13. Section 470(a.2) of the Liquor Code, 47 P.S. § 4–470(a.2), added by Act of June 18, 1998, P.L. 664, provides:

The board shall only refuse to renew a license application if the bureau of licens-ing gives the applicant at least ten days' notice, stating the basis for the objection; otherwise, the board must renew the license after receiving a properly filed renewal application.

**48**

ed violations at the hearing, because, by their very definition, the post-hearing adjudicated violations do not yet exist. Because the Board could not have relied upon post-hearing adjudicated violations in reaching its nonrenewal decision, it would be improper for the trial court to rely upon those violations in reaching its determination.

For the reasons discussed above, the only evidence that the trial court should have considered in determining whether a significant pattern of disturbances existed to support nonrenewal of First Ward's liquor license was the testimony of Officers Raymond D. Zukauskis and Tammy Smith Hamilton, who testified that they heard loud music at First Ward's premises; the four Act 48 incident reports prepared by Officers Zukauskis and Smith Hamilton and authenticated by their testimony; and Officer Ramos's testimony regarding a simple assault call he responded to at First Ward's premises.

Accordingly, we vacate the trial court's decision and remand this matter to the trial court for it to reconsider the totality of the circumstances based only on the evidence that was properly before the trial court.

### ORDER

AND NOW, this 15th day of December, 2010, the order of the Court of Common Pleas of Philadelphia County dated August 14, 2009, is VACATED, and this matter is REMANDED for further proceedings in accordance with the attached opinion.

Jurisdiction is relinquished.