## Schalles v. Pennsylvania Liquor Control Board

C.P. of Allegheny County, No. SA 13-001147

O'REILLY, *J.*, Nov. 10, 2014—

## I. Preliminary Matters

This matter involves the appeal by Vern M. Schalles t/a T's Circus Bar (Licensee or the "Bar") of the action taken by the Pennsylvania Liquor Control Board ("Board") in denying renewal of Licensee's Liquor License on November 6, 2013.

Licensee's appeal was filed on November 8, 2013. I conducted a de novo trial on March 26, 2014. At that trial the complete record of testimony and exhibits were submitted as respondent Exhibit 4. No other evidence was submitted to me. Thereafter, the record of that trial was transcribed and counsel filed excellent and able briefs in support of their contending positions.

The facts show that on November 6, 2013 the Board denied renewal of the Bar's license and that an opinion in support of the renewal would be issued if an appeal was filed. An appeal was filed and a 52 page, undated opinion was issued with Conclusions of Law wherein the Board said:

1. Licensee received the requisite notice of Licensing's objections to its renewal application and of the date, time, and place of the hearing held in this matter.

2. Section 470 of the Liquor Code [47 P.S. § 4-470] vests in the Board the authority to refuse renewal of a restaurant liquor license.

3. As of the date of the hearing, Licensee had accrued

fifteen (15) adjudicated citations.

4. Testimony and police reports were provided for nine (9) police incidents since June 2011, involving fights, drugs, and disorderly operations.

5. Licensee failed to provide sufficient timely corrective measures to address all its citations and incidents at the hearing.

6. Licensee breached his CLA with the Board.

7. Licensee filed a late renewal application.

8. Licensee has abused the privilege of holding a license.

9. Restaurant Liquor License No. R-9633 was not renewed effective June 1, 2013.

In his brief, counsel for the Board and the Board in its findings, asserts that there are approximately 14 adjudicated citations, approximately seven incidents of disturbances at or immediately adjacent to the Bar that warrant the non-renewal. Testimony and police reports were provided for several of the police incidents involving fights, drugs, and disorderly operations. In addition, the Board claims that Licensee failed to provide sufficient timely corrective measures to address all of its citations and incidents at the hearing, breached his CLA with the Board, filed a late renewal application and has abused the privilege of holding a license.

Upon *de novo* review, the Court of Common Pleas may exercise its statutory discretion to make findings of fact and conclusions of law, and to sustain, alter, change or modify any action of the PLCB, whether or not it makes findings which are materially different from those found by the

Board. *Goodfellas, Inc. v. Pennsylvania Liquor Control Board*, 921 A.2d 559 (Pa. Cmwlth. 2007). A trial court may issue a ruling different from that issued by the PLCB, even if the court's findings of fact are identical to those issued by the PLCB, as long as the trial court's decision is supported by substantial evidence. *Pennsylvania Liquor Control Board v. Bartosh*, 730 A.2d 1029 (Pa. Cmwlth. 1999).

## II. FACTS

By way of background, the Bar has been owned and operated by Licensee Vern Schalles for about thirty years. He is a life-long resident of Swissvale, lives two blocks from the bar, and has owned various area businesses. Licensee has been involved in the community for many years. He takes senior citizens on trips and is involved with local baseball teams. The Licensee caters events for the senior group in Swissvale, area churches, baby showers and funeral homes. The Bar has been RAMP certified since 2002. Licensee had a partner in the business for several years but Licensee took over all operations about 12 years ago. Except for the most recent ones, there have been no citations since 2003. The Bar is located at 7526 Center Street, Swissvale, Pittsburgh Pennsylvania.

Renewal of a liquor license is not automatic and the Board has the authority to refuse to renew a license for any of the reasons set forth in 47 P.S. §4-470 (a.l). *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24 (Pa. Cmwlth. 2006), *appeal denied*, 929 A.2d 647 (Pa. 2007) (TABLE). However, when considering the manner in which the licensed premises is being operated, and any activity occurring off-premises, the Board may consider "whether any substantial steps were taken to address the activity occurring on or about the premises." 47 P.S.

§4-470(a.l). Although the licensee is required to take substantial affirmative measures to prevent misconduct, a licensee is not required to do everything possible to prevent criminal activity on the premises, act as its own police force or close its business. *I.B.P.O.E. of West Mount Vernon Lodge 151 v. Pennsylvania Liquor Control Board,* 969 A.2d 642, 651 (Pa. Cmwlth. 2009).

The Board has concluded that the shuttering of the Bar is warranted. However, the evidence does not prove that the Bar is a nuisance bar or a problem establishment that needs to be closed to protect the community. The following incidents do not warrant the non-renewal of the Bar's liquor license.

On June 4, 2011, Officer Justin Keenan of the Swissvale Police Department issued a citation for public intoxication to an intoxicated individual that he observed exiting the Bar and walking to the municipal parking lot. However, Officer Kennan did not see this individual enter the Bar or see him consuming alcoholic beverages at the Bar. In fact, the testimony established that the Bar's doorman refused to permit the individual to enter the Bar because he was visibly intoxicated.

The incident on March 16, 2011, involved a tip given to the Swissvale Police that an individual with an outstanding warrant for arrest was at the Bar. After being arrested and searched, an officer found small amounts of marijuana and cocaine and the individual was charged with possession. However, the officer testified that he had no evidence that the individual obtained the drugs in the Bar or that he sold drugs in the Bar. The licensee testified that he did not know the individual and had never seen him in the Bar. This incident provides no support for the action of the Board in not renewing the license.

On September 20, 2011, a woman reported that she had been hit by a beer bottle in the Bar. The woman presented at the police station with a bloody nose covered in a substance later determined to be potpourri. After investigating, Lt. Matthew Lisovich determined that the woman had been struck with a bucket of potpourri at the Bar. However, the police were unable to identify the assailant and no charges were filed. This incident provides no support for the action of the Board in not renewing the license. What I also find interesting is that Lt. Lisovich testified that when the victim was at the police station immediately after the incident, and she received a text on Twitter message from her assailant (N.T. 42).

Given this information, I find it strange that Lt. Lisovich would later say there was no arrest because "they were unable to *identify* the actor/assailant" (N.T. 46).

On May 15, 2012, a report was generated for an incident of theft and/or an altercation that allegedly occurred on May 10, 2002 at the Bar. The Board did not produce the alleged victim at the hearing and the delay in reporting the incident undermines its reliability. This incident provides no support for the action of the Board in not renewing the license.

On January 6, 2012, an incident occurred involving an alleged assault between the Bar's doorman and a patron in the municipal parking lot. The doorman was charged with simple assault but the disposition of the case was not known. This incident provides no support for the action of the Board in not renewing the license.

Another incident occurred on November 25, 2012 where the Swissvale police had to separate two people who were yelling and pushing each other in the municipal parking lot next to the Bar. However, no evidence was

presented to show that those people had been patrons of the Bar. I find no evidence that the bar had any connection to this incident.

On December 29, 2012 a woman exited the Bar and began punching the driver's side of a vehicle. A man exited shortly thereafter and the two began fighting and punching each other. Both were charged with simple assault and disorderly conduct and the female was also charged with criminal mischief. However, no evidence was presented to prove that the patrons were intoxicated or that they had been over-served in the Bar. Like the other incidents, this matter does not support the Board's determination of non-renewal.

The final two incidents occurring on January 21, 2013 and March 4, 2013 were disturbances that had nothing to do with the Bar. One involved a robbery at another establishment and the other involved a car stolen off of the street. These disturbances referred to by the Board were incidents where the Swissvale Police asked the Licensee to provide external video footage which had nothing to do with the operation of the Bar and he was unable to do so. As to whether this was a breach of the CLA, the Licensee claims they were minor and unintentional. I find that this incident has no connection to the Bar and can form no basis for the Board's non-renewal.

The Bar has never been cited or charged with sales to minors, sales to visibly intoxicated persons or sales after hours. It has never been cited for loud music, noisy or disorderly operations or for any violation affecting the public peace or safety.

At the administrative hearing, Licensee testified that the Bar uses security cameras, a scan device to verify the authenticity of photo IDs and a metal detection wand

device in support of his commitment to responsible alcohol service. The Board contends that Licensee failed to meet with the chief of police on a monthly basis as specified by the CLA. However, Licensee testified that he made every effort to comply. He attempted to contact the chief by telephone and in person but received no response. Finally, he resorted to calling 911 to get the chief to acknowledge his meeting requests. Since June 2013, licensee has met monthly with the assistant chief of the Swissvale Police.

At the aforesaid trial the Board offered the transcript of the administrative hearing that was held by a hearing examiner on August 20, 2013. It offered no additional witnesses or evidence before me. There were Exhibits attached to the hearing transcript denominated as B-1 through B-9. Exhibit B-4 entitled opinions and orders from office of administrative law Judge for the citation numbers identified in the objection letter (Exhibit B-2). Also attached to that transcript as Exhibits B-6 through B-9, are four police reports. The Board relied for its determination on the aforesaid documents as well as the case of *Two Sophia's, Inc. v. PLCB*, 799 A2d 917 (Pa. Cmwlth. 2002) for the proposition that such transcript is admissible. It also relies on *First Ward Republican Club v. PLCB*, 11 A.3d 38 (Pa. Cmwlth. 2010) for the proposition that certain police reports, which are hearsay, may be admitted as business records, if properly authenticated.

With respect to the latter point, counsel for the Bar has objected to the admission of such reports and contends they do not qualify as business records. This is with respect to Board Exhibits 6 through 9. Counsel for the Bar argues that police officer Lt. Lisovich, the proffered "Authenticator" of the reports, did not attest to the official copy or provide a certificate verifying that he had custody of the originals. Counsel relies on *Kinard Entertainment,*

*Inc. v. Pennsylvania Liquor Control Board*, No. 24 C.D. 2012 (Pa. Cmwlth. 2012), where the court found that police reports are inadmissible under the business record exception to the hearsay rule if the proffering officer was not the officer who responded to the events described therein, he was not responsible for preparing or reviewing the information contained in them, and neither he nor a subordinate was responsible for maintaining them. Lt. Lisovich's testimony did not establish for certain that he even reviewed the police reports before testifying. However, in the *First Ward Republican Club* case, the Commonwealth Court held that a police report may be authenticated by any witness who can provide sufficient information relating to the preparation and maintenance of the record to justify the presumption of trustworthiness. Lt. Lisovich did say that he "supervised" the preparers of the reports.

For further consideration is the extent to which police reports are really dispassionate, unbiased reports of business activity worthy of the trustworthiness reposed in records made in the regular course of business. The reports offered herein are advocative and are written with knowledge that they will be used against an individual who has been arrested or otherwise subject to government sanction. Finally, that such reports may be "admissible" does nothing with respect to the "weight" that the fact finder may assign to such reports.

It is also noteworthy that in *First Republican Club* the court re-iterated the standard which the trial court should apply, to wit, — "A trial court reviewing a decision of the Board not to renew a liquor license hears the matter *de novo*, and may sustain, alter, modify, or amend the Board's order even when it is based upon the same evidence presented before the Board" citing *Philly International*

*Bar v. Pa. Liquor Control Board*, 973 A.2d 1, 3 (Pa. Cmwlth. 2008). The foregoing standard relates back to 1998 when our Supreme Court, in *PLCB v. Richard E. Craft American Legion Home Corporation*, 717 A.2d 276 (Pa. Cmwlth. 1998) first articulated it and opined that the trial court, hearing the matter *de novo* "could sustain, alter change or modify a penalty imposed by the Board even based on the same evidence". Such is the holding of *Philly International Bar, supra*, as well. However, in 2013, the Commonwealth Court, in *Becker's Cafe Inc. v. PLCB*, 67 A.3d 885 (Pa. Cmwlth. 2013) explained the limitations on the trial court. That is, within the scope of its *de novo* trial, a trial court may only affirm or deny the action of the Board and could not alter or modify. Analysis of *Becker's Cafe Inc.* shows that both the Licensee *and* the Board appealed the trial courts imposition of an "early closing" condition on the renewal of the license. The Board had denied renewal based on various incidents that happened at the bar, located in the Bottoms of McKees Rocks Borough. The trial court ordered renewal of the license but imposed an early closing condition. On appeal, the Commonwealth Court sustained the trial court's order of renewal but reversed its imposition of the early closing condition. The court based its ruling on the language of the statute which authorizes the trial court at 47 P.S Sec 4.464 "to either sustain or over-rule the action of the Board and either order or deny the issuance of the new license on the renewal or transfer of the license to the applicant."

However, even if these 4 reports are received, they are worthy of little weight. First, Exhibit 6 does not even involve this licensee but rather JR's Bar nearby. Exhibit 7 involves a stolen set of car keys from a patron of both JR and this licensee but does not implicate either in the theft. Exhibit 8 involves a shoving match between two

females in the nearby municipal lot but does not implicate the licensee. Finally, Exhibit 9 involves a fight between a woman and a man in the same municipal parking lot. The woman was observed to leave the licensee, walk into the parking lot and punch a parked van as well as the operator thereof. None of this implicates the licensee.

After analysis, I wonder why these reports were even offered. Their probative value is non-existent.

### III. Analysis

After an analysis of the record and testimony, I find that the Bar is committed to operating in an orderly manner and to selling alcoholic beverages in a responsible manner. After consideration of the entire record and arguments of the parties, I found substantial evidence to warrant the renewal of Licensee's restaurant liquor license. The Board is directed to renew the license.

So ordered: