IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Andrew R. Allison, | : | |
| t/a Double A's Lounge | : | |
| | : | |
| v. | : | No. 70 C.D. 2015 |
| | : | Argued: November 17, 2015 |
| Pennsylvania Liquor Control Board, | : | |
| Appellant | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge


OPINION
BY JUDGE LEAVITT                                                     FILED: January 12, 2016


The Pennsylvania Liquor Control Board appeals an order of the Court of Common Pleas of Mercer County (trial court) directing the Board to renew the liquor license of Andrew R. Allison, who owns "Double A's Lounge" in Sharpsville, Pennsylvania. The Liquor Control Board refused to renew Allison's liquor license because of his record of four citations for violations of the Liquor Code[2] and because of criminal disturbances that took place at or near the licensed premises. The trial court reached a different conclusion on the evidence. First, it found no connection between the small number of criminal disturbances and Allison's management of the licensed premises and no pattern to these disturbances. Second, it found Allison responded with meaningful corrective

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

measures to the citations. The Board contends that the trial court erred because it allowed Allison to testify about the operation of Double A's Lounge after January 14, 2014, the date of the administrative hearing on his license renewal. Concluding that this evidence was not relevant to the merits of the Liquor Control Board's adjudication, we vacate and remand to the trial court.

## Background

Andrew R. Allison (Licensee) holds Restaurant Retail Liquor License No. R-10801 and an attendant amusement permit for "Double A's Lounge," which is located at 512 West Main Street, Sharpsville, Pennsylvania. Licensee filed a renewal application for the period of August 1, 2013, to July 31, 2015.[3] Because Licensee had been issued three citations in 2013, the Board conditionally renewed his license pending the outcome of the citations. On October 17, 2013, the outstanding citations were adjudicated. On December 6, 2013, the Liquor Control Board's Bureau of Licensing notified Licensee that it objected to his license renewal.

On January 28, 2014, a hearing examiner conducted a hearing on the Bureau's objections to Licensee's renewal application. The Bureau's objections were based on Licensee's four citations and failure to prevent criminal disturbances at or near the licensed premises.

---

[3] An application for a license renewal must be filed 60 days before the expiration of the current license. Section 470(a) of the Liquor Code, 47 P.S. §4-470(a). Upon a showing of reasonable cause and the payment of a late filing fee of $100, Section 470(a) permits the submission of a late license renewal application. *See 7101 Frankstown, Inc. v. Pennsylvania Liquor Control Board*, (Pa. Cmwlth., No. 915 C.D. 2012, filed May 20, 2013) (in which the Court termed the late filed renewal application "a *nunc pro tunc*" application). Here, Licensee's renewal application was filed late but accepted and processed as if timely by the Board, applying the statutory good cause standard for late license renewal applications.

Citation No. 12-1047 was issued on July 18, 2012, and adjudicated before Licensee submitted the instant renewal application. Licensee was cited for not posting "no smoking" signs required by the Clean Indoor Air Act[4] and allowing patrons to smoke. He was also cited for the bartender's service of an alcoholic beverage to an undercover investigator at 2:15 a.m., after the 2:00 a.m. closing; not making patrons leave the bar by 2:30 a.m.; and allowing patrons to remove alcohol from the premises. The hearing examiner suspended Licensee's license for seven days and ordered him to display the suspension notice.[5]

Citation No. 13-0710 was issued on April 12, 2013. Licensee was cited for not complying with the Clean Indoor Air Act. He was also cited for selling alcoholic beverages after his liquor license was suspended because of a late tax filing. Licensee admitted the charges, and the hearing examiner suspended his license for six days and ordered Licensee to display the suspension notice.

Citation No. 13-1146 was issued on June 5, 2013. It cited Licensee for not posting the notice of suspension, which had resulted from Citation No. 13-0710, on the front door. Licensee admitted the charge, and the hearing examiner fined Licensee $400, suspended his liquor license for one day and ordered him to display the suspension notice.

Citation No. 13-1273 was issued on June 19, 2013. It cited Licensee for Clean Indoor Air Act violations, *i.e.*, failure to post no-smoking signs and allowing patrons to smoke. It also cited Licensee for allowing "the sound of music or other entertainment, or the advertisement thereof" to be heard beyond the property line in March and April 2013. Reproduced Record at 267a (R.R. ___).

---

[4] Act of June 13, 2008, P.L. 182, 35 P.S. §§637.1-637.11.

[5] Licensee served this suspension in April of 2013, before the instant license renewal.

3

Licensee admitted the charges, and the hearing examiner suspended his liquor license for four days and directed him to display the suspension notice.

In sum, the three 2013 citations resulted in suspensions of six days, one day and four days and the imposition of a $400 penalty. The hearing examiner ordered Licensee to serve the suspensions consecutively, beginning December 9, 2013. The adjudication stated that "on Friday, December 13, 2013 at 7:00 a.m. [Licensee is authorized] to remove the placard of suspension and return the license to its original wall location." R.R. 270a.

After submitting documents on the above-listed citations, the Bureau presented testimony from the Sharpsville Police Department. The officers testified about the above-listed citations and several criminal disturbances that took place at or near the licensed premises.

On April 28, 2012, Officer Lawrence Clark was on routine patrol when he observed two people involved "in a scuffle," *i.e.*, pushing each other, in front of Double A's Lounge. R.R. 118a. Officer Clark issued a citation to one of the men for public intoxication.

On November 8, 2012, Officer Clark spotted an individual "tugging on the corner door of the establishment" at 4:00 a.m. and stopped to investigate. R.R. 123a. While Officer Clark was talking to this person, who smelled of alcohol, the door to the restaurant opened and James Reynolds, the bartender, appeared. Officer Clark testified that Reynolds told him that this individual had been at Double A's for a birthday party and that he had allowed her, and other partygoers, to stay after closing to sober up. R.R. 125a. Officer Clark cited the individual for public intoxication.

4

On November 22, 2012, Officer Brian Johnston was dispatched to Double A's at about 1:00 a.m. because of a noise complaint lodged by a neighbor. Officer Johnston testified that he could hear music from the neighbor's porch, approximately 100 feet from Double A's. Twenty minutes later, another neighbor called the police to complain about the noise. The police told Licensee to turn down the music and issued an oral warning for the noise.

On November 24, 2013, Officer Dean Toth received a call from a Mr. Flynn, reporting that he had been assaulted at Double A's Lounge the night before by another patron, Mr. Ferguson. Flynn told Toth that he suffered "cranial fractures and a brain bleed." R.R. 154a. Officer Toth called Licensee. Two days later, because Licensee had not returned his call, Officer Toth went to the bar and spoke personally to Licensee and his bouncer, Edward Flanigan, who had witnessed the incident. Licensee told Officer Toth that he had not yet returned Officer Toth's call because of his work schedule. Flanigan explained that after an initial pushing, the men "seemed okay," and so Flanigan permitted them to stay. However, approximately 15 minutes later, Ferguson instituted an altercation with Flynn's girlfriend, prompting Flanigan to eject Ferguson. Officer Toth filed aggravated assault charges against Ferguson. Flanigan was surprised to learn of Flynn's injuries because he stayed for some time listening to music after Ferguson was ejected.

On January 1, 2014, Officer Johnston, while on patrol, came upon several people arguing loudly in a parking lot across the street from Double A's Lounge. One participant was arrested and charged with public intoxication, resisting arrest, and disorderly conduct. The others were given an oral warning and

allowed to leave. Officer Johnston testified that the argument began inside the licensed premises when one threw a drink at the other.

Licensee testified at both the administrative hearing and the trial court hearing. Licensee is the Board-approved manager for the establishment. He works there between 30 and 35 hours per week, generally from 4:00 p.m. until 8:30 p.m., six days a week. In addition, he works Saturday evenings from 10:00 p.m. until 1:30 a.m. "[i]f the situation dictates." R.R. 193a. Licensee also works 40 hours per week at Pittsburgh Glass Works. Licensee has been training an employee, Heather Pyle, to serve as his assistant manager to "check up on the employees" when he is not present "to make sure that these things are taken care of in the manner that they're supposed to be taken care of." R.R. 209a. Pyle was not certified as the Board-approved manager; Licensee does not believe "an informal manager" requires Board approval. R.R. 209a, 227a.

Licensee testified that he did not witness the physical altercation that took place on November 24, 2013. Licensee explained that Double A's has a zero tolerance policy on fighting and police must be contacted whenever any "physical altercation" occurs. R.R. 233a-235a. By the time Licensee arrived on the scene, Flynn was leaving. He did not know Flynn was injured until he spoke with Officer Toth two days later. He explained that he did not

> return Patrolman Toth's call because he was working the midnight shift at his job and did not receive the message until 10:00 p.m. the following day. He then proceeded to his job after receiving the message and went to sleep after arriving home at 8:00 a.m. the following morning. He then went to sleep and woke up at approximately 4:00 p.m. or 5:00 p.m., which would have been two (2) days after Patrolman Toth had left his message.

6

Board Adjudication, Finding of Fact, ¶63. As noted by the Board, Licensee now checks his messages daily and responds immediately. Licensee employs a bouncer for evenings when live music entertainment is offered, *i.e.*, 10:00 p.m. to 1:30 a.m. on Thursdays and Saturdays.

Licensee testified that he satisfied the Board's Responsible Alcohol Management Program (RAMP) in January 2011; his RAMP certification expired in January 2013. Licensee explained that he did not realize that this program had to be repeated every two years.

Regarding the citation for operating without a liquor license, Licensee stated that he took "full responsibility." R.R. 176a. Licensee explained that the suspension occurred automatically as a result of a late quarterly tax filing. He thought once he received a clearance from the Department of Revenue, the suspension automatically lifted. Licensee did not realize that he had to request a license renewal application upon receiving the tax clearance.

Licensee testified that he was not at the licensed premises on June 2, 2012, when alcohol was served at 2:15 a.m. and did not learn about the incident until he received Citation No. 12-1047. Licensee stated that he does not serve alcohol after 2:00 a.m. and patrons must leave by 2:30 a.m.; he fired the bartender after he received the citation. Licensee was not present during the November 8, 2012, incident when the intoxicated individual attempted to enter Double A's at 4:00 a.m. to retrieve a cellphone. The bartender present that evening is no longer employed at the bar.

As to the citations issued for violations of the Clean Indoor Air Act, Licensee testified that he had requested an exemption for Double A's on each of his quarterly sales tax filings. He did not realize that he also needed the

7

Department of Health's approval. By the time of the administrative hearing, Licensee had made the filing to obtain this exemption. Licensee explained that there has always been smoking at Double A's, which serves little food; smoking predated his purchase of the establishment.

Regarding the complaints about the music, Licensee testified at the administrative hearing that he recalled only one complaint, *i.e.*, when police appeared in November 2012, to which he immediately responded by reducing the band's sound level. Licensee initially thought the problem was with a particular band. When he discovered a disc jockey was causing the problem, he dismissed her. In addition, Licensee moved the new disc jockey and the bands to the back room, soundproofed its windows, began performing random perimeter checks to make sure no noise is escaping the licensed premises, and has largely discontinued live band performances.

The Board ordered the license non-renewed. It found that Licensee did not "implement substantial timely corrective measures to address its ongoing problems occurring at or immediately adjacent to the licensed premises." Board Adjudication at 38. It faulted Licensee for not installing security cameras, inside and outside the licensed premises, and not using a "barred patrons list." *Id.* at 39. The Board found Licensee's citation history to demonstrate poor management. Although the Board commended Licensee's becoming RAMP-certified, it faulted him for not having his employees so certified. Licensee appealed to the trial court.

In the *de novo* appeal, the trial court adopted the Board's findings of fact. It then made its own findings of fact on the basis of Licensee's testimony:

> (1) Petitioner has had no noise complaints since the June, 2013, citation.

8

(2)  Since the June, 2013 citation for noise (Citation No. 13-1273), Petitioner has hired a new DJ, and Petitioner no longer has live bands on the premises.

(3)  Petitioner testified he is now present on the premises from 3:00 p.m. to 9:00 p.m., Mondays through Fridays, in his capacity as Manager.

(4)  Petitioner has obtained the necessary license from the Department of Health to allow for smoking.

(5)  As for Citation No. 13-1146, the Court finds Petitioner's testimony to be credible with respect [to] the fact he displayed the Notice of Suspension on the premises, albeit in the wrong place, *i.e.*, facing the back parking lot and not on the front door.

(6)  Petition[er] passed an inspection of the premises performed by a field officer of the Liquor Control Board on September 29, 2014.

(7)  At no time has the Board offered to enter into an agreement with the Petitioner pursuant to 47 P.S. §4-470 concerning additional restrictions on the Petitioner's license as a condition for renewal.

Trial court op., 12/17/14 at 2.  The trial court reversed the Board's decision to non-renew Licensee's restaurant liquor license.

The trial court began with the criminal disturbances cited by the Board.  Criminal activity will support a license revocation where the activity can be attributed to the manner by which the licensed premises is operated.  The trial court held that the only serious crime, the assault inside the tavern, was an isolated occurrence that could not be correlated to the management of the licensed tavern. With respect to citations for violations of the Liquor Code, the trial court found that Licensee had responded with corrective measures, particularly with respect to noise, noting that the measures must have been effective because there have been no complaints since the June 2013 citation.  The trial court found the citation for failing to post the suspension notice on the front door to be picayune since

9

Licensee had posted the notice in a visible location. Licensee served the suspension and paid the fines. The trial court observed that if the Board wanted more, such as additional RAMP certifications or the installation of security cameras, then the Board should have entered into a conditional license agreement with Licensee. The trial court concluded that the sanction chosen by the Board, non-renewal of license, was not warranted by the citations, the minor scuffles and single assault inside the licensed premises. Accordingly, it ordered the Board to renew Licensee's license.

## Issues on Appeal

The Board appealed to this Court. It contends that the trial court erred. First, it contends that because it can refuse to renew a liquor license for a single violation of the Liquor Code, it was well within its authority to non-renew on the basis of four citations. Those citations together with the criminal disturbances justified the Board's refusal to renew the license, and the trial court erred in reversing the Board. Second, it contends that the trial court erred in allowing Licensee to testify about anything that took place after the administrative hearing, including the clean bill of health Licensee received from the Board in September 2013. Third, it contends that the trial court erred in, *sua sponte*, bringing up the matter of a conditional licensing agreement and, in any case, the Board cannot be required to offer such an agreement to a licensee.

## Applicable Law

The Liquor Code sets forth the standards and procedures for liquor license renewals and non-renewals. Section 470(a.1) states as follows:

> (a.1) The Director of the Bureau of Licensing may object to and the board may refuse a properly filed license application:

10

(1)     if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the board;

(2)     *if the licensee*, its shareholders, directors, officers, association members, servants, agents or employes have *one or more adjudicated citations* under this or any other license issued by the board or were involved in a license whose renewal was objected to by the Bureau of Licensing under this section;

(3)     if the licensed premises no longer meets the requirements of this act or the board's regulations; or

(4)     due to *the manner in which this or another licensed premises was operated* while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license.  When considering the manner in which this or another licensed premises was being operated, *the board may consider activity that occurred on or about the licensed premises* or in areas under the licensee's control if the activity occurred when the premises was open for operation and *if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated*.  The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

47 P.S. §4-470(a.1) (emphasis added).[6]  Although a citation for a single violation of the Liquor Code can authorize the non-renewal of a license, the typical non-

_____

[6] Section 470(a.1) was added by the Act of December 21, 1998, P.L. 1202.

11

renewal involves multiple violations of the Liquor Code and a string of violent disturbances inside or near the licensed premises. *See, e.g., St. Nicholas Greek Catholic Russian Aid Society v. Pennsylvania Liquor Control Board*, 41 A.3d 953 (Pa. Cmwlth. 2012) (non-renewal for extensive citation history, multiple assaults, including a stabbing, taking place in the club or in the parking lot and failure to address the violence with adequate security).

Licensees are "not required to do everything possible to prevent criminal activity on the premises, act as their own police force, or close their business." *Rosing, Inc. v. Pennsylvania Liquor Control Board*, 690 A.2d 758, 762 (Pa. Cmwlth. 1997). In *Rosing*, the Board non-renewed a liquor license because of criminal activity that had taken place at or near the licensed premises. The trial court reversed the Board because the criminal activity in question related to the licensee's location in a high-crime area, not to the actions of the licensee. The Board appealed, and this Court affirmed the trial court.

Licensing decisions of the Board, whether to grant, transfer or refuse to renew, are appealable to the court of common pleas. Section 464 of the Liquor Code states, in relevant part, as follows:

> The said appeal shall act as a supersedeas unless upon sufficient cause shown the court shall determine otherwise. *The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved*, at such time as it shall fix, of which notice shall be given to the board. The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.

47 P.S. §4-464 (emphasis added).

Whether a trial court adopts the Board's findings of fact or makes its own factual findings, it may reach its own conclusions on the evidence. *See I.B.P.O.E. of West Mount Vernon Lodge 151 v. Pennsylvania Liquor Control Board*, 969 A.2d 642, 647-48 (Pa. Cmwlth. 2009) (holding that Section 464 of the Liquor Code authorizes the trial court to reach its own conclusions "even when the evidence it hears is substantially the same as the evidence presented to the Board.").

**Abuse of Licensing Privilege**

In its first issue, the Board argues that Licensee abused his licensing privilege and that the trial court erred in holding otherwise. The Board contends that Licensee's citation history, which resulted in a fine of $400 and suspensions totaling 18 days, demonstrates the abuse. The Board emphasizes the loud music complaints that were the subject of the most recent citation, Citation No. 13-1273, and argues that the trial court's "finding" that there was not a pattern to the unlawful activity is not supported by substantial evidence. The Board emphasizes the criminal assault on November 24, 2013, that resulted in a patron's cranial bleed as evidence of mismanagement.

Licensee responds that the trial court had the discretion to reach a different conclusion than did the Board on whether to approve or refuse Licensee's application for license renewal. Licensee was sanctioned for each citation. The trial court simply concluded, as was its prerogative, that it was not necessary to supplement those sanctions with a license non-renewal. *I.B.P.O.E.*, 969 A.2d 642. Licensee notes that the criminal disturbances were minor, with the exception of the assault, and not in any way related to the manner of operation of the licensed premises.

13

Licensee makes several points about his citation history. The Bureau charged Double A's Lounge with not informing the public of the license suspension. In fact, Licensee posted the suspension notice where bar patrons were most likely to see it: on the wall facing the parking lot. To non-renew Licensee for this violation "is akin to punishing someone who habitually enters their house through the garage instead of the front door." Licensee Brief at 8. The important point is that Licensee honored the suspension and kept the bar closed during its busiest season. With respect to Citation No. 12-1047, Licensee notes that an enforcement officer redeemed a chip for a bottle of beer at 2:15 a.m. and then departed at 2:56 a.m., when only three patrons were still in the premises. Licensee acknowledges that this violated the Liquor Code. However, he had trained the bartender correctly and set the clocks to read 2:00 a.m. when, in fact, it was 1:50 a.m., to ensure the 2:00 a.m. shutdown of alcohol sales. Licensee was not present when the bartender disregarded his instructions, and he promptly fired her when he learned of this disregard. Licensee served a seven day suspension. The Bureau did not point out what else Licensee could have done, which is not relevant to a citation but is relevant to a non-renewal where the issue is mismanagement.

As to the noise citations, Licensee knew of the noise complaint when the police showed up during a live band performance on November 22, 2012. He responded immediately, and he did not learn of other noise complaints until he received the 2013 citation. Over time, Licensee has taken numerous steps to reduce the noise, as he outlined in his testimony at the administrative hearing. Further, as observed by the trial court, there have been no complaints about noise since the issuance of the June 2013 citation.

14

The trial court relied upon *Becker's Café, Inc. v. Pennsylvania Liquor Control Board*, 67 A.3d 885 (Pa. Cmwlth. 2013). In that case, the trial court reversed the Board's decision to non-renew a liquor license and ordered the licensee to close at 11:00 p.m. Both the Board and the licensee appealed to this Court.

Becker's Café had been the location of numerous incidents of violence, including a shooting, as well as significant drug activity involving marijuana and crack cocaine. In addition, the licensee had been cited five times for violations of the Liquor Code over a 10-year period. The owner, who had been involved with the bar for 40 years, took a number of remedial measures in response to a rise in criminal activity, which Licensee attributed to changes in the neighborhood, not the bar. The hearing examiner recommended that the license be renewed but on condition of an 11:00 p.m. closing. The Board rejected the recommendation and refused to renew the license.

The trial court heard testimony from the licensee and reviewed the administrative hearing record. The trial court adopted the majority of the Board's findings of fact. However,

> the trial court came to a different conclusion than the Board and found that the incidents were neither the result of, nor related to, the manner in which the establishment was operated and that Licensee had taken substantial steps to remedy and address the activity occurring on or about the premises.

*Becker's Café*, 67 A.3d at 888. This Court affirmed the trial court's decision to renew the license as within its prerogative.[7]

---

[7] However, this Court reversed the trial court's condition that the bar must close at 11:00 p.m. as beyond the trial court's authority under the Liquor Code.

Likewise, here, the trial court came to "a different conclusion." *Id.* It concluded that Licensee's manner of operation did not bear a causal relation to the criminal disturbances and that the Board did not establish any pattern to these disturbances. The Board argues that substantial evidence does not support these conclusions. The Board misapprehends the trial court's role on appeal. The trial court did not make a finding of fact but, rather, reached the conclusion that the Board did not meet its burden of showing a pattern of illegal activity and relating it to Licensee's manner of operating Double A's. Indeed, the Board has not illuminated to this Court any pattern to the scuffle across the street, a couple instances of public intoxication and the single criminal assault.

The Board disagrees with the trial court's conclusion of law, but this does not demonstrate error. The trial court has the authority to reach a conclusion on the evidence that was different from that reached by the Board. As pointed out by Licensee, none of the citations related to serious violations of the Liquor Code, such as serving alcoholic beverages to underage persons. We reject the Board's first assignment of error.

**Testimony on Events after the Administrative Hearing**

Licensee testified before the trial court about Double A's operations post-hearing. He testified, for example, about the clean bill of health he received from the Board, which did a thorough inspection in September of 2014. The Board argues that Licensee should not have been permitted to introduce evidence of anything that occurred after the January 28, 2014, administrative hearing.

The trial court overruled the Board's objection to Licensee's testimony about improvements to Double A's made after January 28, 2014. In doing so, the trial court reasoned as follows:

16

> Although there is no case directly on point with respect to this issue, this Court finds that the Commonwealth Court in *First Ward Republican Club [of Philadelphia v. Pennsylvania Liquor Control Board,* 11 A.3d 38 (Pa. Cmwlth. 2010)] based the decision not to allow the trial court to consider post-hearing adjudication violations on procedural due process grounds. Therefore, this Court will consider the post-hearing corrective or remedial measures taken by Petitioner to determine whether they warrant renewal of the liquor license.

Trial court op., 12/17/14 at 5 (internal citation omitted). The Board argues that the trial court has missed the mark.

In *First Ward,* the trial court affirmed the Board's non-renewal of a license. On appeal, First Ward argued that the trial court erred by considering two citations that were issued after the administrative hearing. We agreed, explaining:

> [I]n determining whether the Board properly denied renewal of a license, *the trial court may examine all circumstances that the Board considered when it issued its decision not to renew a license*, including past adjudicated Liquor Code violations. While subsequently adjudicated citations may, in and of themselves, support a separate, future action by the Board, they cannot be used to buttress a preceding determination of the Board.

*First Ward,* 11 A.3d at 47 (emphasis added). Stated otherwise, the trial court considers the evidence "that the Board considered." Necessarily, this evidence may not relate to post-hearing circumstances. In this respect, the trial court erred.

The Board argues that Licensee's remedial measures were untimely. Board Brief at 33. It contends that when Licensee received a loud music complaint on November 22, 2012, he should have responded then, not six months later after he was cited. It is not clear why the Board believes Licensee waited six months. At the administrative hearing, Licensee testified that he began to address noise in

17

March of 2013, well before the noise citation and the administrative hearing of January 28, 2014. R.R. 163a-164a, 217a.

Licensee argues that his remedial measures were all timely.[8] Licensee purchased the bar in 2010 and received no complaints about the music until November 2012. Licensee believed that the person complaining to the police was new to the neighborhood. Further, the police did not notify Licensee of the noise complaints about which they testified. Licensee testified that he took steps to remediate noise before the January 28, 2014, administrative hearing. R.R. 217a. Live bands no longer perform; he hired a new disc jockey in October 2013, before the administrative hearing; two employees walk the premises to monitor noise from the building; and he installed foam insulation in the windows. Licensee notes that after the administrative hearing, while awaiting a decision, he did not sit by but continued to take steps to improve the responsible operation of his licensed premises.[9]

Since the June 2013 citation for noise was issued, there have been no noise complaints, up to the date of the trial court hearing. The trial court should not have permitted Licensee's testimony about events that took place after the January 28, 2014, hearing. Because it cannot be discerned how this evidence affected the trial court's conclusion, a remand is needed. It is for the trial court to

---

[8] As to the assault, Licensee instituted a policy to call police immediately if there is any sort of physical altercation, as was acknowledged by the Board.

[9] Notably, a licensee's appeal to the trial court stays the Board's non-renewal order. This is why Licensee's establishment was inspected in September of 2014 (and given a clean bill of health).

decide whether to reach the same conclusion without the consideration of evidence that related to events that took place after January 28, 2014.[10]

**"Progressive Discipline"**

The trial court explained that the Board should have offered Licensee a conditional licensing agreement. It observed that "the Board's failure to utilize such an agreement with the Petitioner is a factor this Court will consider in determining whether to reverse the Board." Trial court op. at 7. The Board claims that this constitutes reversible error.

Section 470(a) of the Liquor Code authorizes the Board to enter into a conditional licensing agreement with a licensee. It states, in relevant part, as follows:

> The board *may* enter into an agreement with the applicant concerning additional restrictions on the license in question. If the board and the applicant enter into such an agreement, such agreement shall be binding on the applicant. Failure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under section 471 [of the Liquor Code] and for the nonrenewal of the license under this section.

47 P.S. §4-470(a) (emphasis added). The Board argues that nothing in the Liquor Code requires the Board to offer a conditional licensing agreement before it refuses the renewal of a liquor license. Accordingly, Section 470 uses the term "may" and does not use the words "must" or "shall."

---

[10] The Board asserts that Licensee took steps to reduce noise after the administrative hearing, but this assumption is incorrect. Licensee responded to the November 2012 complaint *before* the citation was issued, *i.e.*, in March 2013.

19

It follows, according to the Board, that the trial court may not consider whether the Board has offered a conditional licensing agreement before non-renewing a license.  The trial court responded to this argument as follows:

> Although this Court is certainly aware that the Board cannot be *forced* to use such agreements prior to refusing renewal of a license, *see* [*Becker's Café*, 67 A.3d] at 893-894, this Court finds that the Board *should* use such agreements in a case such as Petitioner's because Section 471 of the Liquor Code specifically authorizes the Board to do so.  Therefore, the Board's failure to utilize such an agreement with the Petitioner is a factor this Court will consider in determining whether to reverse the Board.

Trial court op., 12/17/14 at 6-7 (emphasis in original).  The Board contends that the trial court invented an extra-statutory legal hurdle to non-renewal.  Further, there was no evidence or testimony about a conditional licensing agreement in the record, and the Pennsylvania Rules of Evidence prohibit the admission of evidence and testimony related to settlement offers.  PA. R.E. 408.[11]

---

[11] It states:

> Rule 408.  Compromise Offers and Negotiations
>
>> (a)  Prohibited Uses.  Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>>
>>> (1)  furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>>>
>>> (2)  conduct or a statement made during compromise negotiations about the claim.
>>
>> (b)  Exceptions.  The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

**(Footnote continued on the next page . . . )**

20

The trial court acknowledged that the language in Section 470(a) of the Liquor Code authorizes the Board to issue conditional licensing agreements but does not require them. The trial court merely advised the Board of its belief that this particular case may have been an appropriate case for a conditional licensing agreement, explaining:

> The fact Petitioner has already been disciplined for the citations with suspensions and fines is the initial form of discipline. With an agreement, the Board now has the opportunity to address those remaining issues the Petitioner has acknowledged, but not corrected. For example: (1) Petitioner's apparent inability to have security measures acceptable to the Board, (2) Petitioner's failure to properly manage the licensed premises due to his full time employment elsewhere; and, (3) the RAMP certification. Finally, the Board can impose a deadline for correcting these issues, the most obvious one being July 31, 2015, the end of Petitioner's permit period.

Trial court op., 12/17/14 at 6.

The trial court's discussion on the conditional licensing agreement was *obiter dicta*. In effect, the trial court offered advice to the Board on how to achieve its objectives for having a licensee, for example, install security cameras. It appears this discussion was not essential to the trial court's conclusion. However, the trial court did state that it was a factor in its deliberation. To the extent not considering this factor could have caused the trial court to reach a different conclusion, a remand is warranted.

The Board complains that the trial court imposed an extra-statutory hurdle to non-renewal. The Board also is bound by the terms of the Liquor Code,

---

**(continued . . . )**

PA. R.E. 408. This Court is not persuaded that a conditional licensing agreement is a "settlement agreement" within the meaning of Pennsylvania Rule of Evidence 408.

21

and it does not mandate security cameras, RAMP-certification or full-time bouncers. Nevertheless, the Board based its non-renewal decision, in part, on the absence of security cameras. Notably, the Board did not explain in its adjudication how the presence of cameras would have prevented the single criminal assault inside Double A's or the disorderly conduct that occurred across the street. Nor is it clear that a "banned" patrons list is warranted for a single incident where those involved in the incident are known, by name, to Licensee.

## Conclusion

For the above-stated reasons, we vacate and remand for further proceedings consistent with this opinion.

_____
MARY HANNAH LEAVITT, Judge

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew R. Allison,                      :
t/a Double A's Lounge                   :
                                        :
        v.                              : No. 70 C.D. 2015
                                        :
Pennsylvania Liquor Control Board,      :
            Appellant                   :

# **O R D E R**

AND NOW, this 12th day of January, 2016, the order of the Court of Common Pleas of Mercer County dated December 17, 2014, is VACATED and the matter is REMANDED for further proceedings consistent with the attached opinion.

        Jurisdiction relinquished.

                                        _____
                                        MARY HANNAH LEAVITT, Judge