**GOODFELLAS, INC.**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 12, 2007.

Decided April 10, 2007.

David B. Schlechter, Asst. Counsel and Faith S. Diehl, Chief Counsel, Harrisburg, for appellant.

Edward B. McHugh, Bensalem, for appellee.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Pennsylvania Liquor Control Board (Board) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court) reversing the Board's decision to deny the restaurant liquor license renewal application of Goodfellas, Inc. (Licensee). In doing so, the trial court determined that despite numerous adjudicated citations lodged against Licensee under the Liquor Code,[1] Licensee took corrective measures to improve its operation that warranted renewal of the license. In this appeal, we consider the propriety of the trial court's renewal of the license despite Licensee's adjudicated citations, and the trial court's consideration of Licensee's corrective measures.

The facts in this case are essentially undisputed. Licensee operates a bar/restaurant known as Goodfellas in the Borough of Mount Carbon. Since 1999, Licensee has held a liquor license and attendant amusement permit[2] for

---

1. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101–10–1001.

2. An amusement permit allows a licensee to have dancing, theatricals, floor shows or moving pictures other than television on the li-

Goodfellas. Over the years, Licensee has received citations for various offenses, including numerous citations for noise violations. In 2003, Licensee applied for renewal of its restaurant liquor license and amusement permit for the term effective April 1, 2003. Licensee also wished to build a permanent, enclosed structure to provide live entertainment and sought approval for extension of its license to include the new structure. Initially, the Board's Bureau of Licensing (Bureau) opposed Licensee's application; however, on January 30, 2004, Licensee and the Board entered into a Conditional Licensing Agreement (Agreement) providing for renewal based on certain conditions. The Agreement provided, in relevant part:

9. The Board and [Licensee] therefore agree to the following additional conditions to be placed on Restaurant Liquor License No. R–17704, the amusement permit, and to this location.

 (a) [Licensee] will not apply for any additional extension of premises.

 (b) [Licensee] will soundproof the new structure.

 (c) [Licensee] will use added security personnel in conjunction with any live entertainment events.

 (d) [Licensee] will become compliant and remain compliant with the responsible alcohol management provisions of the Liquor Code.[3]

Reproduced Record at 163a (R.R. ——).

Subsequently, Licensee filed an application for renewal of its restaurant liquor license and amusement permit for the period from April 1, 2005, to March 31, 2007. By letter dated March 21, 2005, the Bureau informed Licensee that it objected to a renewal of its liquor license, stating as follows:

It is alleged that you have abused your licensing privilege, and pursuant to Section 470 of the Liquor Code (47 P.S. Section 4–470), you may no longer be eligible to hold a license based upon:

 a) Violation of the Liquor Code relative to Citation Numbers 03–0188, 02–2099, 02–1522, 02–0229, 01–1884, 01–1786, 01–0878, 00–2115 and 99–2084.[4]

censed premises under Section 493(10) of the Liquor Code, 47 P.S. § 4–493(10).

3. The responsible alcohol management provisions of the Liquor Code, or "RAMP," require training for persons who serve alcohol.

4. These adjudicated citations are as follows:
 1. Citation 99–2084 was issued in February 2000 for use of a video slot machine on the premises and resulted in a $450 fine. R.R. 166a–168a.
 2. Citation 00–2115 was issued in January 2001 for loud music, resulting in a fine of $200. R.R. 169a–171a.
 3. Citation 01–0878 was issued in May 2001 for loud music, discounting the price of alcoholic beverages between 12:00 A.M. and 2:00 A.M., and failure to require patrons to vacate the premises in a timely manner after cessation of service. Licensee was fined $550. R.R. 172a–174a.
 4. Citation 01–1786 was issued in September 2001 for loud music and furnishing alcohol to a visibly intoxicated patron. The result was a fine of $800 and a one-day suspension. R.R. 175a–182a.
 5. Citation 01–1884 was issued in September 2001 for loud music and resulted in a fine of $400. R.R. 175a–182a.
 6. Citation 02–0229 was issued in February 2002 because Licensee was not a bona fide restaurant due to lack of seating. This violation resulted in a one-day suspension. R.R. 183a–185a.
 7. Citation 02–1522 was issued in August 2002 for loud music and operating the establishment in a noisy manner and resulted in a fine of $1,000. R.R. 189a–193a.
 8. Citation 02–2099 was issued in December 2002 for loud music and resulted in a fine of $1,000. R.R. 189a–193a.

b) breach of the Conditional Licensing Agreement ... in that you have failed to become compliant with and remain compliant with the Responsible Alcohol Management Provisions [RAMP] of the Liquor Code.

Furthermore, the Bureau of Licensing [objects] to the renewal of the amusement permit ... based on the following:

It is alleged that pursuant to Section 478 of the Liquor Code (47 P.S. Section 4–478), you have abused your privilege by permitting the use of speakers or similar devices causing loud music to emanate from the licensed premises in violation of Section 5.32(a) of the Board's Regulations (40 Pa.Code Section 5.32(a)) resulting in Citation Numbers 03–0188, 02–2099, 02–1522, 01–1884, 01–1786, 01–0878 and 00–2115.

R.R. 153a. On July 14, 2005, the Bureau issued an Amended Objection Letter adding citation number 04–0493 [5] to the list of citations in paragraph (a) of its original letter. A hearing was held in August of 2005.

At the hearing before the Bureau's hearing examiner, the owner/manager of Goodfellas, Deborah Glauda, testified. She acknowledged the numerous citations Licensee had received for noise violations in the past but explained that, in response, Licensee had constructed a building to house live events and insulated it with five layers of sound-proofing material. The structure was completed in April 2004 at a cost of approximately $300,000 and since that time, Licensee has received no further citations or complaints concerning noise.

Ms. Glauda testified that there are no longer any video slot machines on the premises. Her bartenders are now aware that they cannot serve anyone alcohol after 2:00 A.M. and must clear all alcohol from the bar area in a timely manner. Ms. Glauda further testified that she had not been aware of the rule prohibiting the sale of an unlimited amount of alcohol for a fixed price until citation 04–0493 was issued. She stated that all bartenders are now aware of this prohibition. With respect to the Agreement, Ms. Glauda testified that she has complied with the conditions imposed therein, including becoming compliant with the responsible alcohol management provisions (RAMP) in the Liquor Code. Ms. Glauda personally became RAMP-certified as of July 21, 2005.

Following the hearing, the hearing examiner recommended renewal of the liquor license and amusement permit. Disagreeing with the hearing examiner's recommendation, the Board denied Licensee's license renewal application.

The Board noted that by the time of the August 2005 hearing, Licensee had accrued 10 adjudicated citations, and referred to Licensee's citation history as "dismal" and reflecting an "utter disregard for the liquor laws." Board Opinion at 15–16, R.R. 100a–101a. The Board acknowledged that Licensee had solved its noise problems by constructing a new facility for live entertainment; however, the Board concluded that Licensee took too long to remedy the problem. The Board acknowledged that Licensee was in compliance

---

9. Citation 03–0188 was issued in February 2003 for loud music and resulted in a fine of $1,000. Later, Licensee received a one-day suspension for late payment of the fines for 02–1522, 02–2099 and 03–0188. R.R. 189a–193a.

5. Citation 04–0493 was issued in April 2004 for selling an unlimited or indefinite amount of alcoholic beverages for a fixed price and resulted in a fine of $150. R.R. 202a–204a.

with the first three terms of the Agreement at the time it sought renewal but not with the fourth term. It noted that Ms. Glauda did not become RAMP-certified until July 2005, after the Bureau objected to the license renewal. Because of Licensee's "extensive citation history and its failure to timely comply with the [Agreement] regarding RAMP certifications," the Board denied its renewal application. Board Opinion at 18, R.R. 103a.

Licensee then appealed to the trial court. The trial court accepted into evidence the record made before the Bureau and received new evidence. Deborah Glauda again testified. Her testimony was substantially similar to that given at the Bureau hearing, but she explained her delay in becoming RAMP-certified.[6] The trial court also heard testimony from Jeffrey Dunkel, mayor of the Borough of Mount Carbon. Mayor Dunkel confirmed that there have been no formal complaints of noise since Licensee finished its new building. Mayor Dunkel testified that Licensee is the primary payer of amusement tax in the Borough and an important source of income for Mount Carbon.

The trial court reversed the Board and granted renewal of Licensee's liquor license and amusement permit. The trial court found that the Agreement failed to provide any deadline for compliance, including for RAMP-certification. The trial court found, as fact, that Licensee took reasonable and timely steps to comply with the Agreement; that Licensee spent ap-proximately $300,000 to construct a new facility and has not had any further citations related to noise since its completion; that Ms. Glauda did not know that it was illegal to sell an unlimited amount of beer for a set price before Licensee received a citation for that conduct; that Licensee's bartenders are now aware that they cannot serve alcoholic beverages after 2:00 A.M. even though Licensee has an extended-hours food permit; and that there are no video slot machines on the licensed premises.

The trial court then reasoned as follows:

While the Board concluded that the Licensee's corrective measures were insufficient to support renewal of the Liquor License in light of Licensee's citation history, the Court does not reach the same conclusion. The Conditional Licensing Agreement had encompassed all but two of the citations against the Licensee.[7] The Board had no qualms about entering into the [Agreement] under those circumstances, providing the Licensee complied with the requirements of the [Agreement]. The Licensee has since complied with all of the requirements of the [Agreement] and has incurred $300,000 in doing so. As the Licensee argues, it seems disingenuous for the Board to now use those same citations as reasons for denying renewal of the liquor license, even though they may be considered by the Board under the Liquor Code. Moreover, the noise complaints were the bases for at least

6. Ms. Glauda explained that she did not realize the Board expected her to become RAMP-certified until she received a telephone call from the Board regarding the certification requirement. Ms. Glauda explained that she thereafter became certified as soon as possible.

7. The trial court noted that Licensee actually accrued 11 adjudicated citations since Febru-ary 1999. Ten of those citations formed the basis for the Bureau's objections in this case. In December 2004, Citation No. 04–2152 was issued against Licensee for unlawful gambling, lewd entertainment, and permitting entertainers to have contact with patrons. The Bureau did not reference this citation in its objection letter because it had not yet been adjudicated at the time.

seven (7) of the citations against the Licensee. Now that the Licensee has taken corrective measures, there have been no further noise complaints or citations for noise. It seems to the Court that the Licensee has been able to correct a substantial problem and should not now be punished by the Board's refusal to renew the liquor license. Furthermore, the Mayor of Mount Carbon ... favors renewal of Licensee's liquor license and amusement permit because the business provides substantial revenue for the Borough. In summary, it seems to the Court that the purpose behind the Liquor Code, *i.e.*, the protection of the public welfare, health, peace and moral[s] of the citizens, has been accomplished in this case.

Trial Court Opinion at 9–10, R.R. 71a–72a. Concluding that Licensee's efforts satisfied the Liquor Code, the trial court ordered the Board to renew Licensee's restaurant liquor license and amusement permit for the period beginning April 1, 2005, and ending March 31, 2007. The Board now petitions for this Court's review.

On appeal,[8] the Board presents two issues for our consideration. First, the Board contends that the trial court committed an error of law and abused its discretion when it refused to consider adjudicated citations that pre-dated the Agreement and then reversed the Board for doing so. Second, the Board argues that the trial court erred in considering corrective measures taken by Licensee in response to the citations since there was no mitigation defense available to Licensee in this case.

▰▰ Under the Liquor Code, renewal of a liquor license is not automatic. Section 470(a.1) of the Liquor Code, 47 P.S. § 4–470(a.1), provides that the Board may refuse to renew a liquor license for several reasons, including because the licensee has one or more adjudicated citations.[9] The licensee's record of violations may be considered in deciding whether to renew a liquor license and even a single violation

**8.** This Court's scope of review in a liquor license renewal case is limited to determining whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Pennsylvania Liquor Control Board v. Bartosh,* 730 A.2d 1029, 1032 n. 2 (Pa.Cmwlth.1999).

**9.** Section 470(a.1) of the Liquor Code provides:

The Director of the Bureau of Licensing may object to and the board may refuse a properly filed license application:
(1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the board;
(2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the board or

were involved in a license whose renewal was objected to by the Bureau of Licensing under this section;
(3) if the licensed premises no longer meets the requirements of this act or the board's regulations; or
(4) due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

can be sufficient grounds to decline to renew the license. *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board,* 158 Pa.Cmwlth. 283, 631 A.2d 789, 791 (1993). It is not improper for the Board to look at a pattern of violations for which penalties have already been paid in deciding whether to renew a license. *Atiyeh v. Pennsylvania Liquor Control Board,* 157 Pa.Cmwlth. 28, 629 A.2d 182, 183 (1993). This Court has explained that "regardless of when they occur the Board may consider all code violations committed by a licensee in determining whether to renew a liquor license." *Pennsylvania Liquor Control Board v. Bartosh,* 730 A.2d 1029, 1033 (Pa.Cmwlth.1999).

■ When an appeal is taken from a Board decision, under Section 464 of the Liquor Code,[10] the trial court hears the matter *de novo* and renders its own findings of fact and conclusions of law. *Two Sophia's, Inc. v. Pennsylvania Liquor Control Board,* 799 A.2d 917, 919 (Pa. Cmwlth.2002). The trial court must receive the record of the proceedings below, if offered, and may hear new evidence. *Id.* at 922. The trial court has the authority to sustain, alter, change, modify or amend a decision of the Board, even if the court does not make findings of fact that are materially different from those found by the Board. *Id.* at 922, n. 5.

With the foregoing principles in mind, we consider, first, whether the trial court erred by refusing to consider the citations that led to the Agreement, and in faulting the Board for considering those citations.

■ Contrary to the Board's arguments, the trial court neither ignored the citations that pre-dated the Agreement, nor did it reverse the Board's decision for the reason that the Board considered the citations. The trial court specifically discussed the citations. It noted that Licensee complied with the Agreement and spent $300,000 to cure the noise problems that had generated most of the citations. Further, the trial court specifically acknowledged that, under the Liquor Code, the Board was permitted to consider all of Licensee's citations in deciding whether to renew the liquor license. However, the trial court concluded that the Board was being disingenuous by refusing to renew the license based on the citations after Licensee spent a significant sum of money to prevent future citations. In sum, the trial court considered the citations and, because it was reviewing the matter *de novo*, made its own findings and conclusions about the significance of Licensee's citation history. As such, the trial court did not commit an error of law or abuse its discretion.

We turn, next, to the Board's second argument, which is that the trial court erred in considering the corrective measures taken by Licensee in response to its adjudicated citations. According to the Board, a mitigation, or so-called "substantial steps," defense is only available when the Bureau objects to a license renewal based upon third-party penal code violations occurring at or near a licensed premises under Section 470(a.1)(4) of the Liquor Code, 47 P.S. § 4–470(a.1)(4).[11] The

47 P.S. § 4–470(a.1).

10. This section provides in relevant part:
 ... The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the board. The court shall either sustain or over-rule

the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.
 47 P.S. § 4–464.

11. Section 470(a.1)(4) of the Liquor Code provides, in relevant part, that the Director of the

Board suggests that when, as in this case, the Bureau objects to a license renewal based on an alleged violation of a conditional licensing agreement, or on adjudicated citations involving direct violations of Section 470(a.1)(2) of the Liquor Code, 47 P.S. § 4–470(a.1)(2), the "substantial steps" defense is not available. The Board asserts that in considering substantial affirmative steps taken by Licensee in this case, the trial court improperly substituted its discretion for that of the Board. We disagree.

This Court has previously considered the issue raised by the Board. In *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24 (Pa.Cmwlth.2006), the licensee had four adjudicated citations involving selling alcohol to minors, and the Board refused to renew its liquor license based on the repeated nature of the offenses. The trial court reversed the Board's determination, finding that the licensee had expended substantial time, energy and money to take the steps necessary to prevent future sales of alcohol to minors. On appeal to this Court, the Board argued, as it does in the case *sub judice*, that the trial court erred by considering the steps taken by the licensee in response to its citations, because this defense is not available under Section 470(a.1)(2) of the Liquor Code, 47 P.S. § 4–470(a.1)(2).

In rejecting the Board's argument, this Court held that both the Board and the trial court have "the discretion to renew a license even where the licensee has several adjudicated violations and takes steps to make sure that it would operate the establishment in accordance with the liquor laws." *U.S.A. Deli*, 909 A.2d at 28. We also clarified that the trial court is free to substitute its discretion for that of the Board and find that the steps taken by a licensee in response to its adjudicated citations justify the renewal of its license. *Id.*

 The foregoing authority indicates that, in the instant case, the trial court enjoyed broad discretion in conducting its *de novo* review of the Board's decision. The trial court was free to consider the corrective measures Licensee took in response to its citations, and to substitute its discretion for that of the Board in determining that those corrective measures warranted the renewal of Licensee's license.[12] Therefore, the trial court did not err or abuse its discretion in reversing the Board and ordering the Bureau to renew Licensee's liquor license and amusement permit.

For these reasons, we affirm the trial court's order.

**ORDER**

AND NOW, this 10th day of April, 2007, the order of the Court of Common Pleas of

---

Bureau of Licensing may object to and the board may refuse a properly filed license application

due to the manner in which this or another licensed premises was operated ... When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the li-

censed premises was operated. *The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.* 47 P.S. § 4–470(a.1)(4) (emphasis added).

12. The Board argues that its interpretation of the Liquor Code should not be disregarded unless clearly erroneous. While we agree with this premise, we have already determined in *U.S.A. Deli* that the Board's interpretation of Section 470(a.1)(2) of the Liquor Code as precluding a reviewing court from considering a licensee's corrective measures is clearly erroneous.

Schuylkill County dated June 8, 2006, in the above captioned case is hereby affirmed.