IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph W. Troutman, Sr.           :
                                  :
          v.                      :  No. 1385 C.D. 2017
                                  :  Argued:  September 12, 2018
Pennsylvania Liquor Control Board, :
                                  :
          Appellant               :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  January 24, 2019


          The Pennsylvania Liquor Control Board (PLCB) appeals from the August 30, 2017 order of the Court of Common Pleas of McKean County (trial court), which, following a *de novo* hearing, sustained the appeal of Joseph W. Troutman (Licensee) and reversed the PLCB's denial of the application for renewal of Hotel Liquor License No. H-6232 (LID No. 63618).  In doing so, the trial court reviewed Licensee's extensive history of violations but emphasized the PLCB's decision to renew the license in 2015 despite that history.  The trial court also emphasized that Licensee's record after August 1, 2015, was greatly improved in comparison to that prior history.  The PLCB maintains that the trial court erred and abused its discretion in failing to consider evidence of the citations and incidents that occurred prior to August 1, 2015, in sustaining Licensee's appeal.

## Facts and Procedural History

Since 2013, Licensee's history includes 9 adjudicated citations and about 25 reported disturbances. In May of 2014, during the two-year licensing period that began August 1, 2013, Licensee entered into a conditional licensing agreement (CLA). Thereafter, the PLCB conditionally granted the renewal of that liquor license for the two-year period beginning August 1, 2015, contingent upon the favorable outcome of two pending citations, which were adjudicated against Licensee. After an administrative hearing, the PLCB revoked its conditional approval. Licensee appealed to the trial court, which held a *de novo* hearing and reversed the PLCB's decision and order.

The trial court issued the following Findings of Fact:

1.) Joseph W. Troutman operates an establishment known as the Hotel Holley located at 153 Main Street, Bradford, Pennsylvania. . . .

2.) The Hotel Holley is actually comprised of three (3) areas licensed to sell alcohol. One is the bar or "back bar" area of the Hotel Holley; the second is the Holley Express, which is licensed to sell "to-go" alcoholic beverages but does contain a café area; and Joe's Main Street Steakhouse, a full-service restaurant that also sells alcoholic beverages. Collectively, these areas shall be referred to as the "Hotel Holley." . . .

3.) The Hotel Holley is licensed to sell alcohol under Hotel Liquor License H-6232. Before the application of renewal that is the subject of this matter, the hotel liquor license was set to expire July 31, 2017.

**4.) Renewal had been granted for the subject hotel liquor license for the period of August 1, 2015 to July 31, 2017.**

2

**5.)** **Renewal was conditioned upon a Conditional Licensing Agreement ("CLA") that was executed May 29, 2014 by Troutman and May 30, 2014 by the PLCB.**

**6.)** **The CLA was enacted as part of Troutman maintaining his hotel liquor license through the period of August 1, 2013 to July 31, 2015, but it remained in effect for additional renewals because it was never terminated.**

7.) The important terms of the CLA are quoted below in relevant part:

\* \* \*

a. Troutman shall remain compliant with the responsible alcohol management provisions of the Liquor Code[1] including, but not limited to:

    i. New employee orientation;

    ii. Training for alcohol service personnel;

    iii. Manager/owner training;

    iv. Displaying of responsible alcohol service signage; and

    v. Certification of compliance by the Board's Bureau of Alcohol Education;

b. Troutman shall use a "transaction scan device," as that term is defined in the Liquor Code, to scan the identification of all patrons entering the premises, notwithstanding the fact that the patron's identification was scanned on a previous occasion. For purposes

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

of this section, "occasion" shall mean between 7:00 a.m. and 2:00 a.m. of the following day.

c.   Troutman must designate a responsible person (or persons), who must be present at the premises and oversee it if the board-approved manager is not present. This requirement shall apply between 6:00 p.m. and one-half (1/2) hour after the time when all patrons are required to vacate the premises. A record of the days and hours that the responsible person(s) is/are overseeing the operation of the establishment in the absence of the Board-approved manager shall be maintained as a business record, subject to section 493(12) of the Liquor Code, and shall be available upon request to law enforcement officials, as well as Board employees and employees at the Pennsylvania State Police, Bureau of Liquor Control Enforcement….

\* \* \*

e.   One (1) or more violations of section 493(1) [of the Liquor Code, which states that it is unlawful for any licensee or any employee or agent of such licensee or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor], shall be a violation of this agreement].

f.   Troutman shall employ at least two (2) security guards who will be present and working at the licensed premises on all Fridays and Saturdays that the licensed premises is opened from 8:00 p.m. until one half-hour after patrons are required to vacate the premises. Troutman shall also have at

4

least two (2) security guards who will be present and working at the licensed premises whenever there is live entertainment at the premises; Live entertainment shall include but shall not be limited to bands and a disc jockey. All security personnel shall be clothed in such a way as to make his/her status as security personnel readily apparent.

g. Failure to adhere to this agreement may result in citation(s) by the Bureau and/or non-renewal of the license by the Board.

**8.) Since the effective date of the CLA, Troutman's Hotel Liquor License was renewed one (1) additional time: from August 1, 2015 to July 31, 2017.**

9.) From August 1, 2015 to July 31, 2017, there has been one (1) citation and adjudication known as No. 15-1595. However, this adjudication regarded actions that occurred before Troutman's hotel liquor license was renewed on August 1, 2015.

**10.) Troutman has had nine (9) adjudicated violations.**

**11.) Neither one single violation, all occurring before August 1, 2015, nor their aggregate prevented Troutman from renewing his hotel liquor license.**

**12.) Neither one single violation, all occurring before August 1, 2015, nor their aggregate diminished the reputation of Troutman as to make him an ineligible hotel liquor license holder as a person of poor or ill repute.**

**13.) From August 1, 2013 to August 1, 2015 there were twenty-one (21) disturbances at or near the Hotel Holley.**

5

14.) Neither one single disturbance, all occurring before August 1, 2015, nor their aggregate prevented Troutman from renewing his hotel liquor license.

15.) Neither one single disturbance, all occurring before August 1, 2015, nor their aggregate diminished the reputation of Troutman as to make him an ineligible liquor license holder as a person [of] poor [or] ill repute.

16.) From August 1, 2015 to July 31, 2017, there have been four (4) disturbances at or near the Hotel Holley.

17.) The August 2, 2015 incident involved the late Kimberly Dexter, a homeless woman, who was intoxicated and drinking a beer on the sidewalk along Main Street in front of the Hotel Holley. A Bradford City police officer observed that Kimberly Dexter was unable to stand and was sitting in front of the Hotel Holley with scraped hands and knees, slurring her speech. She was cited for disorderly conduct and public drunkenness. No Persons were harmed.

18.) As it relates to the August 2, 2015 incident, there is no indication that Kimberly Dexter obtained alcohol from the Hotel Holley. There is no indication that the Hotel Holley or its employees served alcohol to a visibly intoxicated person.

19.) The August 8, 2015 incident involved a potential fight at about 11:30 p.m. in the parking lot across the street from the Hotel Holley. A Bradford City police officer on patrol noticed a large crowd congregating in a parking lot across the street from the Hotel Holley. The officer heard screaming and yelling and drove into the parking lot to investigate what he believed to be a fistfight between two men. The crowd immediately dispersed including

the two men suspected of fighting. The only person who remained was one Louis Colts, who began yelling at the officer. The officer believed Louis Colts was intoxicated as he appeared to have trouble standing and smelled of alcohol. The officer warned Louis Colts to just leave. Louis Colts crossed the street and tried to enter the Hotel Holley through the back entrance (i.e. to the "back bar"), but was not permitted inside by security. After being dismissed from the Hotel Holley, Louis Colts was arrested and cited with public drunkenness. No one was significantly harmed.

20.) Nothing in the August 8, 2015 incident exhibits or demonstrates that Louis Colts had become intoxicated at the Hotel Holley. In fact, it appears that the employees of the Hotel Holley acted responsibly by not admitting a person who appeared to be visibly intoxicated.

21.) On October 21, 2015, a highly intoxicated man was outside of the McDonald's restaurant adjacent to the Hotel Holley. The police responded to the incident and, according to officers, the man was of severely diminished cognitive ability. He was unable to coherently answer any of their questions and gave a false address. The police report indicates that the man told officers that he had been drinking at the Hotel Holley. After the man's daughter refused to retrieve him, he was transported to the Bradford City police station and placed in a holding cell. A portable breathalyzer test was conducted and indicated a blood alcohol level of .247. Notwithstanding, the police did not believe the man to be in need of any emergency medical treatment as they did not transport him to any hospital. No one was harmed in this incident.

22.) As it related to the October 21, 2015 incident, there is no suggestion as to how much alcohol the man had consumed at the Hotel Holley, whether he

had consumed alcohol at other establishments, etc. There is also no direct evidence to corroborate the man's only coherent statement that he had been drinking at the Hotel Holley.

23.) On May 6, 2016 Jonathon Lee Yeager ("Yeager") drove his truck over his friend and fellow patron Lori Swanson ("Swanson") who tried to prevent Yeager from leaving the Hotel Holley.

24.) This incident is subject to a pending civil lawsuit in [the] McKean County Court of Common Pleas and the defendants include Troutman and the Hotel Holley.

25.) Yeager was not charged with a DUI [driving under the influence] as a result of this incident.

26.) Yeager pled to [1 count of aggravated assault by vehicle; 1 count of accident involving death or personal injury while not properly licensed; 1 count of duty to give information or render aid; 1 count of driving while suspended; and 1 count of reckless driving].

27.) Swanson was severely injured as a result of being hit by the truck. These injuries included hip shattering and a broken back in two places. After surgery, Swanson has plates and screws in her right side and is unable to bear weight on her left leg at this time. She is currently wheelchair bound.

28.) Upon Yeager's testimony, after the accident, Yeager fled and consumed three (3) or four (4) beers over the course of about three (3) hours. Yeager then had someone drive him to the police station and turned himself into authorities.

29.) While Yeager was in the Hotel Holley, there is disputed testimony regarding how much, if any alcohol, Yeager had.

30.) There are two primary witnesses to this event. Lorie Gault, a bartender at the Hotel Holley who was off duty but in the bar as a patron on the day of the incident; and Lori Swanson, who was struck by the car and is now seeking damages.

31.) At the hearing before this Court, Lorie Gault testified that Yeager was not drunk, but he was tired from being up all night before coming into the bar in the midday. She also testified that Yeager stated that he consumed alcohol before reaching the Hotel Holley, but he did not state a specific quantity or duration of time. She saw Yeager with a single beer in his hand at the Hotel Holley over the course of about four (4) hours.

32.) At the administrative hearing, Swanson testified that Yeager had shots and beers.

33.) Both witnesses may have ulterior motives for their testimony. However, Swanson's ulterior motives are more acute given the pending civil suit against Troutman and the Hotel Holley.

**34.) Before June of 2016, Troutman has made improvements to the Hotel Holley clientele and physical structure.**

**35.) Troutman has begun to operate a steakhouse restaurant that attracts families and more upscale diners to the area.**

36.) The Hotel Holley has a back parking lot that it shares with a barbershop. In addition to the barbershop, there is a Dollar General store at the end of the block which also has some parking around the building and there is only a low bar creating some separation between parking lots.

37.) Across Main Street from the Hotel Holley is a grocery store and gas station with a large parking lot.

9

38.) Across Davis Street from the Hotel Holley is a large parking lot as a part of a "mini-mall" or shopping complex. This parking area is divided into two separate areas by a brick wall.

**39.) Troutman has made improvements to his parking lot including extra and brighter lighting.**

**40.) The City of Bradford Police Department has a camera installed near the premises that is capable of observing the back entrance of the Hotel Holley and part of the parking lot.**

41.) Troutman would consider allowing the police to place additional cameras if cameras were also placed at other nearby liquor dispensing establishments.

**42.) The Hotel Holley also operates as a hotel. Of the one hundred (100) rooms, sixty-eight (68) are rentable as dwelling places. The ones not rented are used for storage, etc.**

**43.) Of the rentable rooms, many are rented to homeless persons referred to the Hotel Holley by Destinations, Salvation Army, First Presbyterian Church, and other non-profit organizations. As of June 2015, Troutman had housed at least sixty (60) homeless persons so far that year.**

**44.) There are fifty-two (52) permanent residents of the Hotel Holley. About ten (10) or fifteen (15) residents are senior citizens on fixed incomes. Many other residents receive Social Security Disability Benefits and are unable to work.**

**45.) In addition to homeless persons, Troutman provides housing for the less fortunate in the community at the Hotel Holley. In addition to**

> **providing services to less fortunate individuals, Troutman houses several less fortunate families.**

46.) The monthly rent for permanent residents is about $480.00 per month. Monthly rent includes utilities such as gas, electric, garbage collection, water, sewage, and cable television.

47.) Troutman operates this hotel/residential portion of the Hotel Holley at a loss. Instead, Troutman uses revenues from his alcohol sales to defray the costs of operating the hotel/residential portion of the Hotel Holley.

48.) **Troutman's operation of the Hotel Holley as a hotel/residential facility is of great benefit to the community as it shelters homeless persons and provides permanent, stable housing for those who could not otherwise afford it.**

49.) **No evidence was presented of any acts committed by Troutman himself to be or become an ill regarded person in the community.**

50.) **Troutman's employees include security officers, a manager for times when Troutman is not there, and Responsible Alcohol Management Program ("RAMP") certified bartenders.**

51.) **There is appropriate signage, scanning devices, and records maintained by the Hotel Holley in the course of its operations.**

Trial court's Findings of Fact, Nos. 1-51 (emphasis added).

The trial court considered various factors that may support the PLCB's denial of an application to renew a liquor license,[2] including: 1) violations

---

[2] In relevant part, Section 470 of the Liquor Code states:

**(Footnote continued on next page…)**

(a.1) SHOULD NOT BE BOLDED The Director of the Bureau of Licensing may object to and the board may refuse a properly filed license application:

(1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the board;

(2 if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the board or were involved in a license whose renewal was objected to by the Bureau of Licensing under this section;

(3) if the licensed premises no longer meets the requirements of this act or the board's regulations; or

(4) due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

(a.2) The board shall only refuse to renew a license application if the bureau of licensing gives the applicant at least ten days' notice, stating the basis for the objection; otherwise, the board must renew the license after receiving a properly filed renewal application.

(a.3) If the objection to the application is based on the reputation, criminal history, citation history or activity of one or more of the applicant's shareholders, directors, officers, association members, servants, agents or employes and not on the reputation, criminal history, citation history or activity attributable to the applicant, the board shall order the divestiture of the shareholders, directors,

**(Footnote continued on next page…)**

of Pennsylvania law by the licensee, its agents or employees; 2) violations of PLCB regulations; 3) any adjudications to any license or involvement with a license that was objected to by the PLCB; 4) a failure of the premises to conform to the Liquor Code; 5) the manner of operation of the premises, including activity on or about the property, correlations between such activity and operation of the premises, extent to which the licensee or its agents or employees had control over such activity, and whether steps were taken to address activity on or about the premises; and 6) the reputation of the licensee.

In its analysis, the trial court noted that no one of the above factors is dispositive. The trial court also emphasized that time is an important consideration when reviewing a licensee's history. Thus, while a single violation may be

_____

**(continued…)**

officers, association members, servants, agents or employes in question, in lieu of refusing the application. If such divestiture does not occur within thirty (30) days of the board's order, then the board may refuse the application.

(b) In cases where a licensee or its servants, agents or employes are arrested or charged with violating any of the laws of this Commonwealth or if a licensee has one or more unadjudicated citations pending against the licensee at the time a renewal application for the license is pending before the board, the board may, in its discretion, renew the license; however, the renewed license may be subsequently revoked by the board if and when the licensee or its servants, agents or employes are convicted of the pending criminal charges or when the citation issued against the license is adjudicated by the Office of Administrative Law Judge.

In the event the renewal license is revoked by the board, neither the license fee paid for the license nor any part thereof shall be returned to the licensee.

47 P.S. §4-470.

sufficient to support the non-renewal of a license, typically, non-renewals involve multiple violations of the Liquor Code and a number of disturbances inside or near the licensed premises. *Allison v. Pennsylvania Liquor Control Board*, 131 A.3d 1075, 1081 (Pa. Cmwlth. 2016). Additionally, the trial court observed that licensees are not required to implement every possible safety measure or do everything possible to prevent criminal activity on the premises. *Todd's By the Bridge v. Pennsylvania Liquor Control Board*, 74 A.3d 287, 297 (Pa. Cmwlth. 2013); *Rosing, Inc. v. Pennsylvania Liquor Control Board*, 690 A.2d 758, 762 (Pa. Cmwlth. 1997).

The trial court set forth a detailed history of Licensee's citations and incidents beginning in 2013. The trial court then emphasized that the totality of Licensee's record prior to August 1, 2015, was not considered grounds by the PLCB to outright deny the license renewal. Referencing the factors listed above, the trial court concluded that Licensee had no violations of Pennsylvania law or adjudicated violations of the PLCB's regulations or the CLA during the most recent licensing period. Additionally, Licensee's violations of the CLA, related to scanning of the premises,[3] did not prevent renewal of the license for the 2015-17 period. The trial court noted that there were four disturbances on the premises after August 1, 2015. In one of those instances, Licensee's employees could have called police to remove a visibly intoxicated person. However, there was no evidence of a correlation between the operation of the premises and two other incidents. The last incident involved serious injury, but it appeared to have been a dispute between two friends. Licensee has taken steps to improve the premises on

---

[3] Licensee breached the CLA requirement to use a transaction scan device on three occasions, in February, May, and June of 2015.

14

several fronts, including hiring security, training his bartenders, who are RAMP certified, adding lighting in the parking lot, opening a restaurant that attracts a more upscale clientele, and discontinuing live entertainment.

Having set forth the relevant facts in detail, the trial court stated that it gave little weight to Licensee's numerous violations and incidents prior to August 1, 2015, because that record did not preclude the PLCB from renewing his license in 2015. The trial court found that subsequent violations were either *de minimis* or not within Licensee's control. Rather than having ill repute, the trial court found that Licensee is performing a community service by giving shelter to people who would otherwise be homeless and subsidizing the cost of housing for seniors and disabled persons. The trial court stated that Licensee's service to the community is a significant factor and proves his character.

**Trial court's authority**

In *de novo* hearings regarding PLCB matters, the trial court must make its own findings of fact based upon the record below in conjunction with other properly admitted evidence. *Two Sophia's, Inc. v. Pennsylvania Liquor Control Board*, 799 A.2d 917 (Pa. Cmwlth. 2002). Further,

> [w]hether a trial court adopts the [PLCB's] findings of fact or makes its own factual findings, it may reach its own conclusions on the evidence. *See I.B.P.O.E. of West Mount Vernon Lodge 151 v. Pennsylvania Liquor Control Board*, 969 A.2d 642, 647-48 (Pa. Cmwlth. 2009) (holding that Section 464 of the Liquor Code authorizes the trial court to reach its own conclusions "even when the evidence it hears is substantially the same as the evidence presented to the Board.").

*Allison*, 131 A.3d at 1082. The PLCB does not question the trial court's authority to reach a conclusion different from its own.

**Issues**

On appeal, the PLCB argues that the trial court misunderstood the conditional renewal of the license for the 2015 period. The PLCB contends that because of this error, the trial court improperly disregarded Licensee's history of violations. More specifically, the PLCB asserts that the trial court's repeated references to the PLCB's approval of Licensee's renewal application for the 2015-17 period reflect that the trial court misconstrued the PLCB's conditional approval as an outright approval. The PLCB asserts that, based on this mistake, the trial court erred in failing to consider the evidence of citations and incidents prior to August 2015. The PLCB maintains that the trial court erred in ordering the renewal of the license where there were 9 adjudicated citations of the subject hotel liquor license before the 2015-17 operation period; there were 24 incidents of disturbance at or near the establishment during that period; Licensee breached the CLA; and Licensee is not a reputable person.

Licensee responds that the trial court properly considered all of the evidence. Additionally, Licensee points to evidence that, since he entered into the CLA, he has taken affirmative steps to become a more responsible operator of the premises, and he maintains that the violations cited after the CLA were *de minimis* in nature and do not outweigh the benefits his business contributes to the community. Licensee argues that he had no citations in 2016 and did not have any violations for incidents that occurred after his hotel liquor license was renewed on August 1, 2015, reflecting his improvement in managing the Hotel Holley. Licensee contends that the disturbances/incidents that have occurred at the Hotel

16

Holley are not related to the operation of the establishment itself, but are isolated incidents that involve different individuals or operations undertaken by the police and beyond Licensee's control. Finally, Licensee argues that in order to be disreputable, Licensee himself would have had to commit acts to earn such a status and that the conduct of others does not affect his reputation.

**Analysis**

Initially, we note that the trial court, in its numerous findings, addressed every relevant citation, violation, and incident. Moreover, while the PLCB contends the trial court mistakenly construed the conditional approval as an outright approval, our review reveals that the trial court characterized the conditional approval *as a failure to outright deny* the license renewal for the 2015-17 licensing period. The trial court's decision includes various references to revocation, renewal, and non-renewal of a license. Contrary to the PLCB's assertions, the trial court's language does not demonstrate that its conclusions rest on a mistaken understanding of the facts or the law.

Of course, "it is not improper for the PLCB to look at a series of violations of the liquor laws that have already been the subject of a penalty when deciding whether to renew a license." *I.B.P.O.E. of West Mount Vernon Lodge 151*, 969 A.2d at 648. However, "[a]lthough past adjudications may be considered in a license renewal case, the trial court, reviewing the matter *de novo*, may make its own findings concerning the significance of the licensee's citation history." *Id.* Indeed, our Supreme Court has made clear that the trial court is "required to conduct *de novo* review and, in the exercise of its statutory discretion, to make its own findings and conclusions. Based upon its *de novo* review, it may sustain,

17

alter, change, modify or amend the [PLCB's] action whether or not it makes findings [that] are materially different from those found by the [PLCB] . . . ." *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14, 19-20 (Pa. 1994).

In *Goodfellas, Inc. v. Pennsylvania Liquor Control Board*, 921 A.2d 559 (Pa. Cmwlth. 2007), this Court affirmed a trial court's order reversing the PLCB's decision to deny renewal of a liquor license. The licensee in *Goodfellas* operated a bar/restaurant in the Borough of Mount Carbon and had a liquor license and attendant amusement permit. After the Bureau of Licensing objected to the renewal of the license and amusement permit, a hearing examiner held a hearing and subsequently recommended renewal of both. The PLCB disagreed and denied the licensee's renewal application, noting citations for loud noise and pricing violations. The PLCB acknowledged that the licensee had solved its noise problem by constructing a new facility but contended that it took too long to do so. The PLCB also conceded that the licensee was in compliance with three of the four terms of the parties' CLA. Nevertheless, the PLCB noted that the licensee had accrued ten adjudicated citations; it referred to the licensee's citation history as "'dismal' and reflecting an 'utter disregard for the liquor laws.'" 921 A.2d at 562.

The licensee appealed to the trial court, which accepted into evidence the record made before the Bureau and received new evidence. In particular, the licensee's owner/manager explained her delay in complying with the CLA. Additionally, the borough's mayor testified that there had been no formal noise complaints since the licensee built the new building. He also testified that the licensee was the primary payer of amusement tax in the borough and an important source of the income for the borough.

The trial court reversed the PLCB's decision and granted renewal of the licensee's liquor license and amusement permit. The trial court determined, *inter alia*, that the licensee took reasonable and timely steps to comply with the terms of the CLA, spent approximately $300,000 to construct a new facility, and had not had any noise complaints since it was completed.

The PLCB appealed, arguing that the trial court erred by failing to consider the adjudicated citations pre-dating the CLA. We began our analysis by setting forth the trial court's reasoning, which was as follows:

> While the Board concluded that the [licensee's] corrective measures were insufficient to support renewal of the Liquor License in light of [the licensee's] citation history, the Court does not reach the same conclusion. The [CLA] had encompassed all but two of the citations against the [licensee]. The [PLCB] had no qualms about entering into the [CLA] under those circumstances, providing the [licensee] complied with the requirements of the [CLA]. The [licensee] has since complied with all of the requirements of the [CLA] and has incurred $300,000 in doing so. As the [licensee] argues, it seems disingenuous for the [PLCB] to now use those same citations as reasons for denying renewal of the liquor license, even though they may be considered by the [PLCB] under the Liquor Code. Moreover, the noise complaints were the bases for at least seven (7) of the citations against the [licensee]. Now that the [licensee] has taken corrective measures, there have been no further noise complaints or citations for noise. It seems to the Court that the [licensee] has been able to correct a substantial problem and should not now be punished by the [PLCB's] refusal to renew the liquor license. Furthermore, the [mayor of the borough] favors renewal of [the licensee's] liquor license and amusement permit because the business provides substantial revenue for the [borough]. In summary, it seems to the Court that the purpose behind the Liquor Code, *i.e.*, the protection of the public welfare, health, peace and moral[s] of the citizens, has been accomplished in this case.

19

921 A.2d at 563-64 (footnote omitted).

We then addressed the PLCB's assertions that the trial court erred and abused its discretion by refusing to consider adjudicated citations that pre-dated the CLA. We explained in *Goodfellas* that the trial court did not fail to consider the prior citations but, rather, in ordering renewal of the license, simply "made its own findings and conclusions about the significance of [the l]icensee's citation history. As such, the trial court did not commit an error of law or abuse its discretion." 921 A.2d at 565. Additionally, we clarified that "the trial court is free to substitute its discretion for that of the [PLCB] and find that the steps taken by a licensee in response to its adjudicated citations justify the renewal of its license." 921 A.2d at 566; *see also Becker's Café, Inc. v. Pennsylvania Liquor Control Board*, 67 A.3d 885, 893 (Pa. Cmwlth. 2013).

In this case, in holding that occurrences after August 1, 2015, alone or in combination with Licensee's past record, together with Licensee's substantial improvements, supported sustaining Licensee's appeal, the trial court properly considered Licensee's history of citations and incidents; the prior determinations of the PLCB, including the CLAs; and the steps Licensee had taken to become a more responsible operator. We conclude that in doing so, the trial court neither erred nor abused its discretion. *Goodfellas*. Finally, we reiterate that the record does not support the PLCB's contentions that the trial court misapprehended the facts or the law.

Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph W. Troutman, Sr.       :
                                      :
          v.            : No. 1385 C.D. 2017
                                        :
Pennsylvania Liquor Control Board,   :
                                      :
          Appellant    :

# **O R D E R**

AND NOW, this 24th day of January, 2019, the order of the Court of Common Pleas of McKean County, dated August 30, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge